LEROY & C. V. AIR-LINE R. CO. et al. v. SIDELL.

(Circuit Court of Appeals, Second Circuit.   February 11, 1895.)

1. CORPORATIONS—CONTRACTS OF OFFICERS—RATIFICATION.

S. entered into a contract with the L. Ry. Co. and the M. Ry. Co. by which S. undertook to build the road of the L. Ry. Co., which was to execute and deliver to S. its first mortgage bonds, at the rate of $10,000 per mile, delivery of such bonds to be made for each five miles of road, as completed, and also to deliver to S. all its capital stock and all township local-aid bonds received by it.   The M. Ry. Co. agreed to guaranty the bonds of the L. Ry. Co. as they should be issued, and was to receive all the stock not required to be delivered to townships for local-aid bonds, and was to have the right to complete the road if S. failed to do so, and in that event to receive the bonds, etc.   After the road had been partially built, G., the president of the M. Ry. Co., notified S. that it must stop at P., a point some distance short of the terminus specified in the contract, and that the M. Ry. Co. would guaranty no bonds for construction beyond that point.   The L. Ry. Co. notified S. that he must abide by G.'s orders.   It appeared that G. signed the contract with S. in the name of the M. Ry. Co., without its seal, and without any vote of the directors authorizing it, but that the company afterwards recognized the contract, and treated the road as one being built for it; that G. had general charge, as president, of the entire system of the M. Ry. Co.; and that the company was accustomed to ratify whatever he ordered done in reference to its affairs.   *Held,* that the M. Ry. Co. was responsible for the act of G. in refusing to carry out the provisions of the contract in reference to guarantying the bonds.

2. CONTRACTS—LIABILITY FOR BREACH.

Whether the M. Ry. Co. was liable, in consequence of such refusal, for the profits which would have been made by S. upon a completion of the whole road, quaere.

3. PRACTICE—SEVERAL JUDGMENTS IN JOINT ACTION.

S. having sued the two railway companies jointly for the damages caused by his being prevented from completing the road, for extra work, and for the value of certain township bonds not delivered, separate verdicts and judgments were rendered against the two companies, that against the M. Ry. Co. based on the breach of contract as to completion of the road, and that against the L. Ry. Co. on the other causes of action. Whether such separate recoveries, in the action against the defendants jointly, were proper, quaere.

4. SAME—JOINT WRIT OF ERROR ON SEVERAL JUDGMENTS.

Whether a writ of error taken by two defendants jointly, to review a several judgment against each, is correct practice, quaere.

In Error to the Circuit Court of the United States for the Southern District of New York.

Winslow S. Pierce (Rush Taggart and D. D. Duncan, of counsel), for plaintiffs in error.

Chas. D. Ingersoll (Albert Stickney, of counsel), for defendant in error.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge.   This is a writ of error by both defendants in the court below to review a several judgment for the plaintiff against each, entered upon the verdict of a jury.   By the verdict the jury found against the defendant the Leroy & Caney Valley Air-Line Railroad Company in the sum of $23,414, exclusive of interest, and against the defendant the Missouri Pacific

Railway Company in the sum of $41,233, exclusive of interest; and thereupon judgment in favor of the plaintiff was entered against each defendant for the amount of the verdict against each. The action was founded on a written contract made by one Loss, and assigned by him to Sidell & Simmons, with the two companies. Under this contract, Sidell & Simmons became contractors to build a railway for the Leroy & Caney Valley Air-Line Railroad Company (hereafter called the "Leroy Company"), from a point in Wilson county, Kan., to or near Elgin, Chautauqua county, near the south line of the state. By the terms of the contract, the railroad was to be a single-track road, with grades to be not over 56 feet per mile, and curves not less than 6 degree curvature; and all work was to be subject to the approval of the engineer of the Missouri Pacific Railway Company. The Leroy Company, on its part, agreed to execute bonds to the amount of $10,000 per mile, to be secured by a first mortgage on its property, and pay over the same and all its capital stock, together with all township local-aid bonds received by it, to the contractors, as a consideration for the construction of the railroad, the payment of first mortgage bonds to be made in full for each five miles of road, as the same should be completed, and payments of the township aid bonds to be made as soon as the conditions upon which they were voted should be complied with. The Missouri Pacific Railway Company agreed on its part to execute a guaranty upon the back of all the first mortgage bonds, as each lot thereof should be issued at the completion of each five miles of road, for the payment of the principal and interest of said bonds. The contract also required the contractors to deliver to the Missouri Pacific Railway Company all the stock of the Leroy Company received by them under the contract, except so much, not exceeding in amount $250,000, as it might be necessary for them to deliver to townships for local aid granted by them. It reserved to the Missouri Pacific Railway Company the right to complete the railroad in case of failure of the contractors to do so seasonably, and in that event to receive in payment all first mortgage bonds, capital stock, and local-aid bonds which would otherwise be due to the contractors.

The complaint is framed upon the legal theory that both defendants were liable for extra work done by Sidell & Simmons in laying side tracks upon a portion of the railway which had been built by the contractors, and accepted by the defendants; and also for damages for a breach of the contract, whereby Sidell & Simmons were prevented from completing the unfinished part of the railroad. The complaint also alleged that the Leroy Company had refused to deliver to the contractors certain township aid bonds, those of Washington township, in the sum of $18,000, which had been earned under the terms of the contract. Upon the trial the court ruled that the Missouri Pacific Railway Company was not liable for the claim in respect to the Washington township bonds, nor for the extra work done in the construction of side tracks, and instructed the jury that any recovery upon these items was to be included in a separate verdict against the Leroy Company. The

verdict against that company seems to have been based exclusively upon these claims. In respect to the cause of action for breach of contract whereby Sidell & Simmons were prevented from completing a part of the railroad, evidence was given upon the trial that in October, 1886, while the first 52 miles of the railroad were in process of construction, the remaining portion of the road having been located and graded in places, Mr. Gould, the president of the Missouri Pacific Railway Company, notified them that the road must stop at Peru Junction, and that the Missouri Pacific Railway Company would guaranty no bonds deliverable for construction beyond that place; that thereupon the contractors had a conference with the directors of the Leroy Company, and the result was a notification from them to the contractors that they would have to abide by the orders of Mr. Gould in reference to the completion of the road; and that thereupon, inasmuch as the contractors were to be deprived of the benefit of the guaranty of the bonds by the Missouri Pacific Railway Company, they abandoned the building of the road beyond Peru Junction. Evidence was also given to show what it would have cost the contractors to build the road to the original terminus, and of the market value of the township aid bonds which they would have received had it been completed pursuant to contract. The verdict against the Missouri Pacific Railway Company was based exclusively upon this cause of action.

We are not called upon by any exceptions taken at the trial to consider the question whether there was any liability on the part of the Missouri Pacific Railway Company to the plaintiff, under the contract, for the profits which would have inured to the contractors if the contract had been fully performed; nor the further question whether it was proper to permit a recovery against one defendant upon one or more causes of action, and against another for a different cause of action, in an action at law, where the defendants were sued for a joint liability; nor, inasmuch as there has been no motion made to dismiss the writ of error, are we called upon to consider the question whether a writ of error taken by both defendants jointly, to review a several judgment against each, is correct practice. Many of the assignments of error have not been argued or noticed in the brief of counsel for the plaintiff in error, and, in disposing of the case, we shall not deem it necessary to refer to those which have been thus ignored.

The only exceptions taken upon the trial by the defendant, aside from those respecting the admission of testimony, relate to instructions given and refused by the trial judge to the jury. The defendant excepted to that part of the instructions concerning the responsibility of the Missouri Pacific Railway Company for the act of Mr. Gould in notifying the contractors that, if the road was built beyond Peru Junction, the Missouri Pacific Railway Company would not guaranty any of the bonds deliverable therefor. The instructions were as follows:

"The first question is, if Mr. Gould, as president of the Missouri Pacific, did improperly and unjustifiably break the contract, and refuse to carry out its provisions in regard to guarantying the bonds of the Leroy Company,

and thus compel the contractors to abandon work. was such act one which he was authorized to do within the scope of the powers conferred upon him by the board of directors, and for which, therefore, the Missouri Pacific is responsible? You have heard the testimony of Mr. Hopkins, the second vice president, as to the scope of Mr. Gould's power, what he was authorized to do, what he was permitted to do by the board, and what, in the usual discharge of his duties as president, he did do in regard to the business of the Missouri Pacific, with the assent of his board. I think you will not have any difficulty in finding as a fact that, if Mr. Gould did this act, he did it within the scope of his customary powers, intrusted to him by the board of which he was the president. When the president of a corporation does, in its behalf and within the scope of its charter, an official act which requires the concurrence of the board of directors, and the board, knowing that he has done so, does not dissent within a reasonable time, it will be presumed to have ratified his act; and when an official act is performed by the general agent of a corporation, in its behalf and for a purpose authorized by its charter and within the scope of his ordinary powers, and the corporation knowingly receives the benefit of the act, without objection, it may be presumed to have authorized or ratified the contract of its agent."

Coupled with the exception to this part of the instructions, the defendant requested the court to instruct the jury that, under the testimony, Mr. Gould was not shown to have had any authority to represent the Missouri Pacific Railway Company in the matters referred to, and that there was no proof of any knowledge by the directors of his action, inferential or otherwise, and that there was no evidence that the Missouri Pacific Railway Company violated the contract.

It is argued in support of the assignments of error based upon the instructions thus given and refused that the Missouri Pacific Railway Company was a stranger to that part of the contract which provides for the building of the railroad, its only relation to it being that of a guarantor of the bonds to be given in payment; and, therefore, that its act in refusing guaranty for the uncompleted portion of the road did not make it liable for the profits which the contractors would have made had they been permitted to complete the road. No such point, however, was brought to the attention of the trial judge. His instructions in regard to the liability of the Missouri Pacific Railway Company were challenged merely upon the ground that the act of Mr. Gould was not in law the act of the company, because it had not been proved that it was within the scope of his powers as an agent, or that the directors had knowledge of and assented to it; and, consequently, that there was no evidence of a breach of its contract by the Missouri Pacific Railway Company. Upon the questions thus raised for the consideration of the trial judge, his rulings were manifestly correct. It had been proved by the testimony of the vice president of the company that railway lines built under contracts similar to the one in suit, and which, when built, would pass at some future time into the control of the Missouri Pacific Railway Company, were treated by the directors as being built for the company, and were customarily included as its property in their annual reports; that the part of the railway which consisted of the last 12 miles actually completed had been included in the report for 1887 under the head of "New. Construction"; and that in the report for 1888 the 52 miles of that road was included

in the list of railways which had been completed and turned over for operation to the company. This evidence was sufficient to justify a finding by the jury that the directors knew that the original contract for building the road had been modified, and a road accepted in lieu which did not go to the original terminus. It had also been proved by the testimony of the vice president that Mr. Gould had general charge as president of the entire system of the Missouri Pacific Railway Company; that he was accustomed twice a year to make a trip over the railway officially to look after the interests of his company; that whatever he ordered done when on such trips was ratified by the company; and that he was on one of these trips at the time when he notified the contractors that the Leroy road must stop at Peru Junction. The original contract was executed by Mr. Gould as president of the company, without the seal of the company, and there was no evidence of any resolution of the board of directors authorizing him to do so; yet the company had recognized and adopted the contract while the construction was in progress by guarantying the bonds and receiving the stock, and they had subsequently treated the road as being built for the company, and accepted it, although not built according to the original contract. Upon these facts, there being no evidence whatever to indicate that the company had ever dissented from or objected to anything which had been done by Mr. Gould, we think the trial judge would have been justified in instructing the jury that his authority to represent the company in what he did was amply proved. The president of a railway company, who is its chief executive officer, and who is allowed to enter into a building contract by parol without the corporate seal, has like authority, unless the power is withdrawn, to authorize a modification of the contract. Indianapolis Rolling Mill v. St. Louis, etc., R. Co., 120 U. S. 256, 7 Sup. Ct. 542. As applied to the facts, the instructions enunciated only familiar and well-settled principles of law. One of these is that if an officer of a corporation openly exercises a power which presupposes a delegated authority for the purpose, and other corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officer will be deemed rightful, and a delegated authority will be presumed. Bank v. Dandridge, 12 Wheat. 70; Pennsylvania R. Co. v. Keokuk & H. Bridge Co., 131 U. S. 371, 9 Sup. Ct. 770. "It is not necessary, in order to constitute a general agent, that he should have done before an act the same in specie with that in question. If he has generally done things of the same general character and effect, with the assent of his principals, that will be enough." Bank v. Norton, 1 Hill, 502. The facts brought the case within the operation of these principles. Apparently, Mr. Gould had been intrusted with the most plenary powers in representing the company when he was making his official trips over the railway. We find no error in the instructions.

Many exceptions were taken in behalf of the defendants to the admission of testimony against their objections. The assignments of error are insufficient to require us to examine these exceptions. The assignments do not specify any particular evidence which was

improperly admitted, and merely state that the court "erred in admitting testimony produced by the plaintiff against the objections of the defendant." In view of the numerous objections of this class which appear in the record, we are not disposed to relax the rule which requires the particular errors relied upon to be specifically, pointed out in the assignments of error. Rule 11 provides that, when the error alleged is to the admission or to the rejection of evidence, "the assignment of errors shall quote the full substance of the evidence admitted or rejected." 11 C. C. A. cii., 47 Fed. vi.

It is argued in the brief of counsel that the verdict is not supported by any testimony showing damages to the plaintiff. This argument proceeds upon the theory that the plaintiff was allowed to recover without evidence tending to prove what it would have cost to complete the railway conformably to the terms of the original contract, and by proof tending to show what it would have cost to complete it with modifications of grade. No such question was raised upon the trial, and there is no exception or ruling in the case which suggests that it was brought to the attention of the trial judge.

No sufficient reasons appear for a reversal of the judgment, and accordingly it is affirmed.