## DUBUQUE & S. C. R. CO. v. PIERSON.[1]

### (Circuit Court of Appeals, Eighth Circuit. October 1, 1895.)

### No. 466.

1. RAILROAD COMPANIES—REORGANIZATION—WARRANTY OF TITLE.

In 1857 the D. Ry. Co. mortgaged its property, including certain lands granted to it by the United States and the state of Iowa, to secure an issue of bonds, the mortgage providing that the trustees should have sole management of such lands, with power to sell the same on such terms and conditions as they deemed best, and that the railway company would warrant the title of the lands to the trustees and their assigns. One W. purchased a part of the lands from the trustees, paying the purchase price in bonds of the company, and receiving a deed by which the trustees covenanted in their official capacity that the railway company would warrant the title. Subsequently litigation arose between the D. Ry. Co. and other companies as to the title to the lands, which continued for many years. In 1860 the mortgage on the property of the D. Ry. Co. was foreclosed, and a new company, the S. Ry. Co., succeeded to the property under the terms of a decree by which it was provided that the bonds of the D. Ry. Co. should be exchanged for preferred stock of the new company, the stock for common stock of the new company, and that the unsecured creditors of the D. Ry. Co. should be paid the amounts due them in common stock of the new company. During the pendency of the litigation as to title to the lands W. carried on a correspondence with the officers of the S. Co. in regard to her rights, throughout which that company took the position that W.'s title was good, but that, if it finally failed, the company would be liable for and would pay to her "the purchase money and six per cent. interest"; and W. thereupon, at the S. Co.'s request, refrained from bringing suit. The title to a part of the lands conveyed to W. was finally decided never to have been in the D. Ry. Co., and W. thereupon sued the S. Co. for the amount of the purchase price. *Held*, that upon the covenants contained in the trustee's deed to W., as well as upon its independent promise to pay her the amount of the purchase price of the land if the title failed, the S. Co. was liable to W. for such purchase price and interest.

2. PAYMENT—IN STOCK—WAIVER.

*Held*, further, that the agreement of the S. Co. to pay "the purchase price with interest" was a waiver of the right to pay W.'s claim in stock.

3. TRUSTEES—POWER OF SALE—WARRANTY.

*Held*, further, that the trustees, under the provision of the mortgage authorizing them to sell the lands on such terms and conditions as they should deem best, were authorized to warrant the title of the lands sold by them to W.

4. CORPORATIONS—OFFICERS—POWERS OF PRESIDENT.

*Held*, further, that the president of the S. Co., who was vested by the by-laws with general supervision and control over its affairs, and who had general charge of all its matters and conducted its business, had power, by his dealings with W., to bind the S. Co. in respect to its liability under the warranty.

In Error to the Circuit Court of the United States for the Northern District of Iowa.

This was an action by Philo B. Pierson, as administrator with the will annexed of Mary B. Wood, against the Dubuque & Sioux City Railroad Company upon a covenant of warranty. The plaintiff recovered judgment in the circuit court. Defendant brings error. Affirmed.

[1] Rehearing denied November 30, 1895.

W. J. Knight and Charles A. Clark (James Fentress, on the brief), for plaintiff in error.

J. D. Springer, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. On the 14th day of March, 1857, the Dubuque & Pacific Railroad Company executed to trustees a mortgage, and on the 9th day of June of the same year, to the same trustees, a second mortgage, it being stated in the latter that the two were to be taken together as parts of the same transaction, conveying to the trustees and their successors its railway, constructed and to be constructed, and all the lands granted by the act of congress approved May 15, 1856, and by the state of Iowa, to it to aid in the construction of a railway from Dubuque to Sioux City, to secure land-grant construction bonds to be issued as therein provided, to an aggregate amount not exceeding $15,000,000. The first of these mortgages provided that all of these lands, "as they shall from time to time become subject to sale shall be under the sole and exclusive management and control of the parties of the second part [the trustees], who shall have full power and authority to sell and dispose of the same at such price, on such credit and terms of payment, and such other conditions as to them shall seem most judicious for the interest of all parties.  *  *  *"  And the mortgage of June 9, 1857, contained the following covenant: "And said party of the first part [the railroad company] hereby covenants and agrees to forever warrant and defend the title of said lands to the parties of the second part [the trustees], their successors and assigns, against the lawful claims and demands of all whomsoever."  On the 27th of June, 1859, Mary B. Wood through her trustee, Augustus Brandagee, purchased from the·trustees 2,086.45 acres of land in Humboldt county, paying therefor $9,053 in the bonds of the company.   The trustees executed a warranty deed for the land to Augustus Brandagee, who took the title in trust for Mrs. Wood, which trust was terminated on the 4th day of October, 1867, by the conveyance by Brandagee to her of the lands so deeded to him as her trustee.   Afterwards Mrs. Wood died, and the defendant in error, Philo B. Pierson, was appointed her administrator.   The trustees' deed to Brandagee contained this covenant of warranty:

"The said trustees, in their official capacity, covenant that the said railroad company shall warrant and defend said premises to said grantee, his heirs and assigns, against the lawful claims of all persons; and in case of any breach of covenant by eviction from said premises through the lawful claim of any person duly established, the said railroad company shall repay to said grantee or his legal representatives the said consideration and lawful interest in land-grant construction bonds at par or in money, at its option."

Soon after the grant of lands to the Dubuque & Pacific Railroad Company, a controversy arose and litigation began between it and its successor, the Dubuque & Sioux City Railroad Company, the plaintiff in error, and their grantees on one side, and the Des Moines Navigation & Railroad Company and its grantees on the other side, as to whether certain lands claimed by the Dubuque & Pacific

Railroad Company and its successor, the Dubuque & Sioux City Railroad Company, passed to the Dubuque & Pacific Railroad Company under the act of congress approved May 15, 1856, or whether they passed to the territory of Iowa and its successors and grantees, of whom the Des Moines Navigation & Railroad Company was one, under the act of congress approved August 8, 1846. This litigation was begun in 1859, and under different aspects, and with varying results, was continued down to 1883, when it was definitely determined by a decision of the supreme court of the United States that 1,528.21 acres of the land purchased by Mrs. Wood from the trustees was not granted to the Dubuque & Pacific Railroad Company by the act of congress and the act of the legislature of Iowa heretofore referred to, but that the same had previously been granted by congress and the state to another corporation, and for other uses. Within a year after it was settled that the trustees' deed passed no title to Brandagee, this suit was brought against the plaintiff in error, the Dubuque & Sioux City Railroad Company, as the successor of the Dubuque & Pacific Railroad Company, to recover the amount of the bonds paid for the lands, and interest thereon. The lands were wild, and never occupied by either party. The defendant in error recovered judgment in the circuit court for $21,234. This was the purchase price, namely, $4.30 per acre, for the 1,528.21 acres to which the title failed, with 6 per cent. interest thereon from the date of the purchase.

The first and most important question is whether the plaintiff in error, the Dubuque & Sioux City Railroad Company, is, on the facts of the case, liable on the covenants of the Dubuque & Pacific Railroad Company, contained in the deed upon which this action is founded. In 1860 the trustees in the mortgages mentioned instituted a suit in equity to foreclose the same, and on the 9th day of August in that year a decree was entered by consent, which contains the following provisions:

"That the complainants have and recover of the Dubuque & Pacific Railroad Company the sum of one million seven hundred and twenty-two thousand five hundred and ten dollars, due and in default upon the mortgages named in the bill. And that, if they fail to pay the same within ten days, their right and equity of redemption in and to the properties mortgaged be, and forever remain, barred and foreclosed, and the right and title thereof shall be absolute in the said complainants. That the complainants in taking and acquiring the absolute right and title in said property, namely, the Dubuque & Pacific Railroad, its franchises, right of way, depot grounds and buildings, rolling stock, lands granted by congress to aid in constructing said road, remaining undisposed of, and other property mentioned in said mortgages, shall take the same to be by them conveyed in conjunction with the Dubuque & Pacific Railroad Company to the Dubuque & Sioux City Railroad Company, in accordance with the terms and conditions hereinafter set forth. And the Dubuque & Sioux City Railroad Company shall have and hold the lands which were granted by congress to the state of Iowa to aid in building said road and branch and by the state of Iowa to the Dubuque & Pacific Railroad Company, subject to the same rights and obligations and upon the same terms and conditions as the same were held by the Dubuque & Pacific Railroad Company; it being expressly agreed and understood that the Dubuque & Sioux City Railroad Company is a new company, formed under articles of incorporation drawn up and adopted for the benefit of all parties concerned in the Dubuque & Pacific Railroad Company, whether as stockholders,

bondholders, or creditors. And by consent, as aforesaid, it is ordered, adjudged, and decreed that the bonded indebtedness of the Dubuque & Pacific Railroad Company shall be exchanged dollar for dollar, with accumulated interest to the date of this decree, for preferred stock of the Dubuque & Sioux City Railroad Company, certificates of which shall be issued in form as follows, to wit: * * * And that the shareholders of the Dubuque & Pacific Railroad Company shall receive in exchange for their stock therein, including dividend interest to 1st June, 1860, on the surrender of the same, common stock in the Dubuque & Sioux City Railroad Company to an equal amount respectively. And that the creditors of the Dubuque & Pacific Railroad Company who hold securities for the amount ow[n]ing them by the company shall have and receive in exchange for such securities, and in satisfaction of the debts, preferred stock in the Dubuque & Sioux City Railroad Company according to the form above written. And that the unsecured creditors of the Dubuque & Pacific Railroad Company shall be entitled to receive in full satisfaction of their claims and demands against the company common stock of the Dubuque & Sioux City Railroad Company to an amount equal to what may be justly owing them respectively. * * * And it is further ordered, adjudged, and decreed that this decree shall not absolutely bar, foreclose, or cut off any of the indebtedness aforesaid, but that the holders thereof shall be entitled to have and receive of the Dubuque & Sioux City Railroad Company payment of the same in common stock, preferred stock, or otherwise, according to the nature of their respective claims. And it is further ordered, adjudged, and decreed that the complainants shall have the right to settle and compromise any claim or claims that may be set up against the Dubuque & Pacific Railroad Company, and that their action therein shall be binding and effectual against the Dubuque & Sioux City Railroad Company; and that it is only such persons as consent to come in under the provisions of this decree that shall be entitled to receive stock in last said company for any claim or demand against the Dubuque & Pacific Railroad Company."

It is obvious from the terms of this decree that it contemplated a transfer of all the property and rights of the Dubuque & Pacific Railroad Company to its successor, the Dubuque & Sioux City Railroad Company, without impairing the rights of the stockholders, bondholders, or creditors of the old company. As to the stockholders, bondholders, and creditors of the old company, the transaction amounted to little more than a change in the name of the corporation. The principal change was, probably, in its name, and the provisions of its charter. It is evident the decree contemplated that the bondholders and stockholders of the old company would sustain the same relations to the new. For a sufficient consideration the new company agreed that the unsecured creditors of the old company should receive the amount of "their claims and demands" in the common stock of the new company. The old company, by the deed of its trustees, and the new company, by its officers, asserted that the deed of the trustees to Brandagee passed a good title. They continued to occupy this position until after the decision of the supreme court in 1883. Some time after the litigation heretofore referred to began, Mrs. Wood left her deed with the plaintiff in error, the Dubuque & Sioux City Railroad Company, and called its attention to this litigation, and expressed the fear that it would result in the loss of her lands, and that in that event she would expect the plaintiff in error to repay her the purchase money and interest. Soon thereafter correspondence was begun between the plaintiff in error and Mrs. Wood, which continued through several years. On Decem-

ber 30, 1874, the plaintiff in error wrote a letter to Mrs. Wood, in which, after referring to a decision adverse to the claims of the company to certain other lands, it says:

"The success of this claim has induced the Des Moines Valley Co. to make an effort to get the remaining lands granted to the R. R. Co., and a suit is now pending in the U. S. circuit court which will decide the question of title to over 20,000 acres of lands still held by us, as well as yours, and, if decided against us, we must pay back purchase money and interest."

In reply to this letter Mrs. Wood wrote, saying:

"M. K. Jessup—Sir: Yours with reference to Iowa lands received, and, as I understand it, I shall have to wait until a decision in the U. S. C. Court is rendered as to the true ownership of the property. I shall expect to hear from you when this result is attained. * * * *"

To this letter of Mrs. Wood the company replied:

"Dr. Madam: Yours of the 2nd inst. is at hand. Should the Des Moines Valley Co. succeed in obtaining title to the lands, this company will be liable for the purchase money and 6 per cent. interest to date of settlement. * * * He [Mr. Thomas Sargent] informs us that Mr. McFarland has made demand on him as our agent to refund purchase money and interest, saying, that in case of refusal he was authorized to commence suit. You can rest assured that the Dubuque, etc., Co. will punctually meet such demands at the proper time, but they have no doubt but that the result of case now pending will be in their favor."

Other correspondence took place of the same general tenor. On the 1st of September, 1875, the company wrote, saying:

"As we have stated before, the Dubuque and Sioux City R. R. Co. will pay all proper and legal claims against them under their warranty, but they are not disposed to anticipate any."

On December 18, 1876, the company wrote, saying:

"We have commenced suit against the Des Moines and Ft. Dodge Co. on these lands and those similarly situated, and our attorney gives us great encouragement of a successful issue. I will write you on my return if anything new occurs, but you can rest assured that this company will do all they can to protect the title to lands sold by the Dubuque and Pacific R. R. Co."

During all the years from the commencement of the litigation that involved the title to the company's lands, including those sold to Mrs. Wood, the position of the company was that Mrs. Wood's title was good, but that, if it finally failed, the company would "be liable for the purchase money and 6 per cent. interest to date of settlement"; that it would "punctually meet such demands at the proper time," but that it was "not disposed to anticipate" such liability. Upon the request of the company, Mrs. Wood refrained from bringing suit against it until it should be determined in the litigation then going on who owned the lands. The company assured her that she would lose nothing by this delay; that, if it turned out that the lands granted to the Dubuque & Pacific Railroad Company did not include the lands sold and conveyed to her, and her title thereto failed, the company would repay her the purchase money with 6 per cent. interest. It is indisputable that the liability of the old company to Mrs. Wood on its warranty of the title to these lands was an unsecured "claim and demand" against that company at the date of the decree by which the new company became bound to pay such claims in its

common stock. When the conveyance to Mrs. Wood was made, the company had no title to the lands, and never thereafter acquired any. Mrs. Wood was, therefore, when the decree was entered, a creditor of the old company in the sum of the par value of the bonds paid for the lands, and interest thereon. The bonds of the old company which she paid for the lands extinguished that amount of the bonded debt of the company, and benefited to that amount the old company as well as the new. She demanded payment of her claim arising out of the breach of this warranty from the new company. When this demand was made, the company did not offer or propose to pay her in its common stock. It distinctly and explicitly acknowledged its liability in the event that her title failed, and agreed in writing in that event to pay her the purchase money and 6 per cent. interest. The promise to pay on the happening of the event mentioned was absolute and unconditional. This was a waiver of its right to pay her in its common stock, and it is now too late to withdraw that waiver.

This promise and agreement of the company makes it unnecessary to consider the question of the statute of limitations, for, confessedly, this suit was brought within the period allowed by the statute of limitations. It is immaterial whether this promise is treated as reviving the cause of action which accrued when the deed was made, or as a new and original promise upon a sufficient consideration. In either case the action is not barred.

The plaintiff in error contends that the trustees exceeded their powers in selling lands not included in the land grant to the old company. But when they made the deed the old company claimed these lands under the grant, and had full knowledge that the trustees were selling them, and approved their action, and received the consideration. And the new company also approved the action of the trustees, and for years defended it in the courts. Another contention of the plaintiff in error is that the trustees had no authority to warrant the title to the lands they sold. They were authorized, by the terms of the trust deed, to sell the lands "at such prices, on such credit and terms of payment, and such other conditions as to them shall seem most judicious for the interest of all parties." Under this power they had the undoubted right to make a warranty deed. It was the only kind of a deed they ought to have made. Any other would have been little less than a fraud upon purchasers, as is shown by the facts of this case. The deed was prepared for the trustees' signatures by the officers of the company under the supervision and advice of Platt Smith, an eminent lawyer, who was counsel for the company, and one of its promoters. The trustees did not even receive the bonds paid for the land. They were paid to and received by the officers of the company at Dubuque, where all the business was done.

Another contention of the plaintiff in error is that it is not bound by the contents of the letters which we have quoted; that the president of the company had no authority to bind the company by the promises therein contained. These letters were written either by M. K. Jessup, the president of the defendant company, or by J. B. Dumont, the assistant secretary of the company, by direction of the

president. Mr. Jessup was one of the trustees in the mortgages made by the old company, and as such signed the deed to Brandagee, Mrs. Wood's trustee. He therefore knew all about the business from its inception, and the nature of the obligation assumed by the new company to the creditors of the old. He knew better than any one else all the facts connected with Mrs. Wood's claim, and as president of the company for many years he knew its attitude in reference to this claim. He was familiar with the company's construction of the decree so far as related to its obligations to persons standing in the situation of Mrs. Wood. He was president of the plaintiff in error, the Dubuque & Sioux City Railroad Company, from 1866 to 1887, a period of 21 years. Dumont was assistant secretary from 1864 to 1883, and during a portion of that time was treasurer. Touching his authority as president, Mr. Jessup testifies as follows:

"As president of the Dubuque & Sioux City Railroad Company, I had general charge of all its matters, and conducted its business from the New York office in all matters usually pertaining to a railroad government. I was very particular to consult with members of the executive committee about every important matter pertaining to the company. I consider that I acted with the advice, counsel, and approbation of the directors in everything I did in relation to the company."

Mr. Dumont testifies that the road was leased to the Illinois Central Railroad Company in October, 1867, and that after that time "the affairs of the company were managed mostly from the New York office." All the letters written to Mrs. Wood were written from the New York office. A by-law of the company provides:

"The executive power of the company shall be vested in a president and vice president. The president shall preside at all meetings of the board of directors, be auditor of accounts, and have a general supervision and control over the affairs of the company."

In Thompson's Commentary on the Law of Corporations, the learned author, after collecting and reviewing the authorities on the subject of the powers of the president of a business corporation, says:

"The view deducible from these and other like expressions of doctrine seems to be that the law ascribes to the president of a business corporation the authority of its general agent for the purpose of binding it by contracts made within the ordinary scope of its business, and that, in the absence of notice to the contrary, persons dealing with the corporation may safely act upon that assumption." Thomp. Corp. § 4618.

Continuing the subject, the same author says:

"It is plain from what has just preceded, that, where the president of a corporation acts as the general manager of its business, either by express agreement by the board of directors or by their tacit consent, larger powers may be ascribed to him, even under the theory by which his powers are most limited, on the principle that he is thereby held out by the directors as possessing the ordinary power incident to the office or agency of a general manager, with which they have clothed him." Id. § 4627.

In this case the by-law of the company expressly invested its president with the "general supervision and control over the affairs of the company," and Mr. Jessup testifies that he acted with the advice,

counsel, and approbation of the directors in everything he did in relation to the business of the company. This, of course, includes the business with Mrs. Wood, and is conclusive as to his authority to act in the premises.

The only remaining question is as to the measure of damages. This question, like that of the statute of limitations, is settled by the express promise of the company to pay the purchase money and 6 per cent. interest. Independently of this promise, the proper measure of damages for breach of covenant of warranty in the sale of land, except under special circumstances, which do not exist in this case, is the purchase money and 6 per cent. interest.

The judgment of the circuit court is affirmed.