## KENT v. ADDICKS.

### (Circuit Court of Appeals, Third Circuit.  November 18, 1903.)

#### No. 1.

1. PRINCIPAL AND AGENT—LIABILITY OF AGENT ON UNAUTHORIZED CONTRACT MADE FOR PRINCIPAL.

Where a contract on its face is that of a supposed principal, although signed by an agent, the agent is individually liable only on the implied warranty that he had the right to make it, and to entitle the other party to recover against him it must be shown not only that the contract was of such character that it would have been enforceable against the principal if authorized, but also that the party seeking to recover had the ability to perform it on his part.

2. CONTRACTS—CONSTRUCTION.

A contract by which a party agrees to sell "his rights" under certain patents for a large consideration, but which recites that he has purchased the right to manufacture, use, and vend the patented article within the territory covered by his contract, binds him to transfer substantially the rights so recited, and he cannot enforce the same against the other party unless he possessed such rights or acquired them, and was able to assign them when the time came for performance on his part.

3. PRINCIPAL AND AGENT—AUTHORITY OF AGENT—EVIDENCE.

Upon an issue as to the authority of an agent to bind his principal by a particular contract evidence is admissible to show that he had made other similar contracts, which had been accepted and carried out by his principal, and that the principal had referred other persons to him as having authority to make contracts of the same class.

4. CONTRACTS—ACTION AGAINST AGENT FOR UNAUTHORIZED EXECUTION—EVIDENCE.

Plaintiff entered into a contract purporting to be with a corporation, and executed by defendant as its president, which recited that plaintiff had purchased the right to vend, use, and manufacture acetylene gas in a state under patents owned by two named corporations, and by which he undertook to sell his rights for specified cities in the state to the corporation.  The corporation having repudiated the contract as unauthorized, plaintiff brought an action for damages against defendant.  It appeared that plaintiff's contract with the two patent-owning corporations was in writing, and provided that plaintiff should organize a corporation with a stated capital, to which the license should be granted on terms therein stated, and that the same should not be assigned.  *Held*, that for the purpose of establishing his ability to perform the contract made with defendant evidence was admissible on the part of plaintiff to show that his contract with the patent-owning companies was negotiated with one D., to whom he was referred by the officers as having authority to make the same, and that prior to his contract with defendant plaintiff made a further oral contract with D. by which the latter agreed on behalf of the companies to issue to defendant's corporation the license which plaintiff agreed to sell in consideration of part of the stipulated payment to be received therefor; that testimony of a third person that he had purchased territorial rights under the same patents through D., to whom he was directed by the officers of the companies owning the same, was also admissible, such testimony tending to show the general authority of D. to execute license contracts binding on the companies.

Gray, Circuit Judge, dissenting.

---

¶ 3. As to implied delegation of authority to executive officers of a corporation, by course of conduct permitted and recognized by the governing board, see Salem Iron Co. v. Lake Superior Iron Mines, 112 Fed. 239, 50 C. C. A. 216, and Taylor Gas Co. v. Wood, 125 Fed. 337.

See Principal and Agent, vol. 40, Cent. Dig. §§ 410, 668.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

H. B. Gill, for plaintiff in error.

John G. Johnson, for defendant in error.

Before ACHESON and GRAY, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. This action grows out of the following contract:

"Memorandum of agreement made this 12th day of December, 1895, between E. H. Rollins & Sons, of Boston, as agents for S. L. Kent, of Clifton Heights, Pennsylvania, and the Bay State Gas Company of Delaware.

"Whereas the said Kent has purchased the right to vend, use and manufacture acetylene gas in Massachusetts, under certain patent rights, from the Electro-Gas Co., of West Virginia, and the United States Acetylene Liquefaction Co. of New York.

"And whereas the said Bay State Gas Co. of Delaware desires to purchase all his rights for the city of Boston and town of Brookline in the Commonwealth of Massachusetts, now therefore the said Bay State Gas Co. agrees to pay and the said E. H. Rollins & Sons agrees to accept in full payment for said rights under said patents the sum of three hundred thousand dollars ($300,000) in cash, payments to be made as follows:

"One hundred thousand dollars ($100,000) on the first day of February, 1896.

"One hundred thousand dollars ($100,000) on the first day of March, 1896, and

"One hundred thousand dollars ($100,000) on the first day of April, 1896, and

"The sum of Fifteen hundred thousand dollars ($1,500,000) of the stock of the said Bay State Gas Co. at its par value, the said stock to be held in escrow by Alexander S. Porter, of said Boston, for six months from date when it shall be delivered to said E. H. Rollins & Sons or to any person or persons whom they may designate.

"Witness our hands and seals this day.

      "E. H. Rollins & Sons,
         "By Walter I. Bigelow, Attorney in Fact. [Seal.]
      "The Bay State Gas Co. (Delaware) [Seal.]
         "By J. Edward Addicks, President."

By this writing, as it will be seen, the defendant, J. Edward Addicks, undertook, as president, to bind the Bay State Gas Company to the purchase which is there agreed to; but when an effort was made to hold the company to its terms it turned out that he was. not authorized to do so, and, suit having been brought against the company, he himself so testified, and the suit failed. The present action is brought to recover damages for the loss of the bargain and the costs and expenses incurred in the attempt to enforce it, the defendant having assumed without warrant to act as he did. There are authorities which hold that the contract in such a case is that of the agent, against whom a recovery may be directly had; but the prevailing and the better doctrine is that where, as in the present instance, the undertaking on its face is that of the supposed principal, the agent is liable only on the implied warranty that he had the right to make it. 1 Am. & Eng. Enc. Law (2d Ed.) pp. 1124–1127; 2 Smith's Leading Cases, 359; Collen v. Wright, 7 Ellis & Black, 301; Simons v. Patchett, Id. 568; Goodwin v. Francis, L. R. 5 C.

126 F.—8

P. 295; Re National Coffee Palace Co., L. R. 24 Chan. Div. 367; White v. Madison, 26 N. Y. 117; Trust Company v. Floyd, 47 Ohio St. 525, 26 N. E. 110; Wallace v. Bentley, 77 Cal. 19, 18 Pac. 788, 11 Am. St. Rep. 231. On that basis not only must the contract be of a character that would be enforceable against the principal if the supposed agent was really authorized (Dung v. Parker, 52 N. Y. 494; Baltzen v. Nicolay, 53 N. Y. 467; Pow v. Davis, 1 Best & Smith, 220), but the party seeking to enforce it must also have the ability to comply, for, if he is not in shape to ask or compel a performance from the supposed principal, he has lost nothing by not having a valid contract with him, and so can demand nothing by way of damages from the agent on its account. This was recognized by the plaintiff at the trial, and it was in response to it that the offers of evidence rejected by the court were made.

It is now contended, however, that these offers were really unnecessary; that all the plaintiff undertook to sell were his rights in the patents referred to, whatever they might be, as to which the other contracting party was put upon inquiry; and the decision in Hamilton v. Kingsbury (C. C.) 4 Fed. 428, is invoked. But the cases are not parallel. What was there assigned was (in so many words) the party's right, title, and interest, without suggestion as to what they might be; and it was held that the purchaser took only what the other was competent to convey. And the same is true of the case of Turnbull v. Weir Plow Co. (C. C.) 14 Fed. 108, which is also relied upon. But in the present instance the plaintiff distinctly averred in the preamble that he had purchased "the right to vend, use, and manufacture acetylene gas" under certain patents, and it was this that the defendant, representing the Bay State Gas Company, assumed to buy. It was incumbent on the plaintiff, therefore, to show that he had a right of the character which he undertook to sell, or that he subsequently acquired it before he was called upon to comply; and without this he was not entitled to a verdict, or at most to one that was merely nominal.

But, on the other hand, we are not convinced that the existing contracts which the plaintiff had with the Electro-Gas Company and the Acetylene Liquefaction Company—except in the particulars hereafter mentioned—were not sufficient to meet this requirement. It is true that the license there provided for was of a restricted character, with important privileges retained out of it, so that the plaintiff by no means possessed complete rights for the territory bargained for. But neither did he contract to convey them. The recital in the preamble that he had purchased "the right to vend, use, and manufacture," on which stress is laid, is plainly nothing more than a convenient generalization, not intended to be exact. So loosely, indeed, is the plaintiff's interest defined that there is no specification, by number, date, or character of invention, of the patents to which it relates, of which, granted and pending, there were a dozen in all; nor mention made of any product or process, except acetylene gas and its manufacture, although a number of others were involved. To learn these particulars, and so give substance to that which was to pass, we have to go outside the recital; and, being carried beyond it for

one purpose, we may look to it also for others not expressed. Undoubtedly, to meet his obligation, the plaintiff must show a substantial right of the character mentioned; the $300,000 cash to be paid, to say nothing of the million and a half of stock, being consistent with nothing less. But there can be no question that he had such rights, however much in some respects restricted, of the extent of which there is evidence that the defendant knew in a general way at the time, and certainly found no occasion to complain of until this suit.

But the serious difficulty in the way of the plaintiff was that he was not authorized to dispose to others of that which he possessed. His contracts with the Electro Gas Company and the Acetylene Liquefaction Company called for the organization within a certain time of a corporation with a specified capital, paid-up and authorized, of which a certain percentage was to be turned over to these companies; and it was to the corporation so formed, and not to the plaintiff himself, that the license to "vend, use, and manufacture," which was there provided for, was to issue, and it was not assignable. Without something, therefore, to relieve the plaintiff from these restrictions, he was not in shape to meet his undertaking; and it was to establish that they had been removed that the evidence which was rejected, was addressed.

It would serve no useful purpose to go over in detail the extended offers made by counsel in this behalf. It is sufficient to note that it was there in substance proposed to be proved that prior to the making of the contract in suit the plaintiff (Kent) had gone to E. N. Dickerson, a well-known patent lawyer of New York, and a director in the Electro Gas Company and the Acetylene Liquefaction Company, through whom he had became interested in these patents, and with whom his negotiations for them had been conducted; and that it had been then and there agreed by Mr. Dickerson, on behalf of the two companies represented, that they would issue a separate license to the Bay State Gas Company for Boston and Brookline— Kent taking the stock and the companies the cash that was to be received therefor; and that the next day after the contract was made it was taken to Mr. Dickerson, who said he was satisfied with it, and would carry it out, issuing the license there called for, upon receipt of the first payment, and leaving it in escrow until the last. Mr. Dickerson's authority in the premises having been challenged, it was further offered to be shown by Mr. Kent that he had had two different negotiations with these companies, in each of which he had been referred by the officers to Mr. Dickerson as the one having power, and that, having arranged with him the terms of purchase, formal contracts were executed by the companies exactly as they had been so arranged by him. Also by Emery S. Turner, who had purchased certain territorial rights under the carbide patents, that when he went to the Electro Gas Company, which controlled them, to make his purchase, he was told to go to Mr. Dickerson; "that he was the man." Bearing upon the same subject, and to be considered in that connection, it had been shown without objection at an earlier stage in the trial that when the Bay State Gas Company failed to meet the

contract in suit, and Kent went to see about it, Addicks referred him to Lawson, who, he said, had got him into the difficulty, and must get him out; and that when Lawson, as his representative, went to Dickerson to see whether he would raise money to buy out the Brookline Gas Company, with which the Bay State Gas Company was having a trade war—a reason given why the contract had not been carried out —Dickerson declared as a condition to discussing the project that the contract with Kent must be respected, and that Lawson had said it would be, on the strength of which Dickerson had undertaken to raise the $4,500,000 required. The objection made to the testimony of Turner that it had relation to other territorial rights, and not the particular ones here in question, was clearly not well taken. While the authority of Mr. Dickerson with respect to the Kent contracts was the immediate subject of inquiry, yet a general authority sufficient to comprehend it was admissible to be shown; and as a step towards it the fact that he was put forward by the representatives of the company mentioned, to act in its behalf in the concluding of other similar contracts, was legitimate proof. The accepted acts of an agent or officer of a corporation are always evidence to show the extent of his powers. Bank v. Dandridge, 12 Wheat. 64, 6 L. Ed. 552; Merchants' Bank v. State Bank, 10 Wall. 604, 19 L. Ed. 1008; Martin v. Webb, 110 U. S. 7, 3 Sup. Ct. 428, 28 L. Ed. 49; Sherman v. Fitch, 98 Mass. 59. As said in Bank v. Norton, 1 Hill, 501:

"It is not necessary, in order to constitute a general agent, that he should have before done an act the same in specie with that in question. If he have usually done things of the same general character and effect with the assent of his principal, that is enough."

The objection now made that the offer was too vague, in not giving the name or authority of the persons by whom the witness was referred to Mr. Dickerson, was not suggested at the time, and is not, therefore, to be considered. The defendant is to be regarded as standing and the court as passing simply upon the question raised. If the attention of counsel had been directed to the reason now urged, the defect could possibly have been supplied.

It is left a little uncertain by the record upon just what ground the rest of the evidence was excluded—whether it was thought that the authority of Mr. Dickerson in the premises did not sufficiently appear; or whether, in the opinion of the court, no mere agent or officer, whatever his position, could modify the formal contracts of the company once they were signed and sealed. But the only alternative in the latter case would be a resolution of the governing board, and this the authorities certainly do not require. In the Case of Sappho, 94 Fed. 545, 36 C. C. A. 395, it was provided in the written contract according to which the repair of a steamer was undertaken, that no bills for extras should be incurred except upon certain formalities; but without regard to these, the president, who had supervision of the job, directed that certain extra work which was necessary to make the vessel seaworthy, should be done; and it was held that the corporation was liable without any formal act of the directors acquiescing therein. In Leroy R. R. Co. v. Sidell, 66 Fed. 27,

13 C. C. A. 308, the verbal order of the president of a railroad, into whose charge the general management was intrusted, that a branch road should stop at a certain point, contrary to the terms of the duly executed construction contract, was sustained; his authority being inferred from the subsequent acceptance of the work. So, in Rolling Mills v. St. Louis Railroad, 120 U. S. 256, 7 Sup. Ct. 542, 30 L. Ed. 639, where a contract for a lot of rails to be purchased by the defendant was effected on behalf of the plaintiff company by its president, a release by the same official was held good; it being shown that under the by-laws and the course of business between the parties the making of such contracts had been confided to him. And in Dubuque Railroad v. Pierson, 70 Fed. 303, 17 C. C. A. 401, the assurances of the president of a railroad, who had general control of its affairs, with regard to the character and extent of its obligation to the plaintiff under a foreclosure decree, by which it had succeeded to the rights and obligations of a previous company, were held binding on the company, the plaintiff, on the strength of them, having deferred to sue.

It is to be borne in mind in every such instance that the written contract, while executed in the name of the corporation, is in reality the act of its representative officer, moving in its behalf, of prima facie validity because of his presumed authority, and a modification from the same source would seem to be of equal efficacy. The seal of the corporation, if affixed, may add sanction and dignity to the instrument, but the parties are not restricted to a specialty to make a desired change. Railroad v. Trimble, 10 Wall. 367, 19 L. Ed. 948. Sealed or unsealed, written or parol, the contract depends for its validity on whether the officer or agent who made it was empowered by the corporation to do so.

It is urged, however, that, inasmuch as everything which was done by Mr. Dickerson was followed by a formal act of the two companies, the evidence at its best was merely of an authority to negotiate, but not to conclude, a contract, nor to waive the provisions of one already made. But the fact that the agreements with respect to these patents, after being settled by Mr. Dickerson, were subsequently put in formal shape, does not necessarily detract from his asserted position. Intended purchasers were referred to him not merely to treat with, but as one having power, the proof of his authority to fix definite and binding terms being shown by the adoption of his work just as it stood. That which he determined upon became the accepted contracts of the companies whom he represented, the contracts being made when he agreed to them, and the rest being mere matter of form. The offers of evidence were broad enough to be so interpreted, and should therefore have been received.

The judgment of the Circuit Court is reversed, and a new trial is awarded.

GRAY, Circuit Judge (dissenting). The written contract between the plaintiff and Addicks, as president of the Bay State Gas Company, recited what purported to be a perfect and plenary license in said plain-

tiff, and implied a present right to grant the same to the Bay State
Gas Company. The language is:

"Whereas said Kent has purchased the right to vend, use and manufacture
acetylene gas in Massachusetts, under certain patent rights from the Electro
Gas Company of West Virginia and the U. S. Acetylene Liquefaction Com-
pany of New York."

As the matter stood under this contract, the defendant had a right
to suppose that, upon the performance of the covenants on his part
to be performed, he would be thereupon invested with the full and
complete right to "vend, use and manufacture acetylene gas in the
city of Boston and town of Brookline, in the commonwealth of
Massachusetts." As a matter of fact, those contracts with the Elec-
tro Gas Company and the Acetylene Company vested no rights as
to their recited patents in the plaintiff. They were executory agree-
ments, undertaking to grant licenses to a New Jersey corporation to
be thereafter organized by the plaintiff, with $2,000,000 capital, $250,-
000 of which was to be paid up. Numerous conditions were imposed
upon the enjoyment of the rights thereafter to be conveyed to this
New Jersey corporation, which absolutely negatived the right to grant
a plenary license, even if the contract had been one between this cor-
poration and the defendant. Its title was imperfect, by reason of
the qualifications and limitations annexed thereto.

Under these circumstances, it seems to me, as it did to the learned
judge of the court below, that it was incompetent for the plaintiff to
attempt to cure this clearly defective title, or want of title, in him-
self, by testimony as to the verbal promises of certain officers
of the patent-owning corporations, to procure from the said cor-
porations licenses to the plaintiff's grantees in conformity with his
contracts with them. The plaintiff was bound to prove, as well as
aver, that he was always able and ready to comply with the contract.
The title he put in evidence was clearly inadequate to support this
requirement. I do not think that anything short of a complete and
executed contract from these corporations with the plaintiff cov-
ering the premises, would be sufficient to support the plaintiff in his
suit against the defendant.

Again, no authority was shown or offered to be shown on the
part of the persons with whom the plaintiff avers that he dealt, to
bind the corporations. It was quite beside the case to offer testi-
mony that in other cases such officers, after making such promises,
had procured an execution of them by the corporations for whom they
held themselves out as acting. Such corporations could repudiate
the action of their agents or pretended agents, justly or unjustly,
and this defendant would have no possible remedy therefor against
the corporations. What the plaintiff was required to have under his
contract with the defendant, as president of the Bay State Gas Com-
pany, was a present right to grant the license he pretended to grant
in his contract with him,—the right in praesenti, not a contingent right,
dependent upon the happening of something in the future, or the ex-
ecution or non-execution of promised contracts. Even if we were
at liberty to infer an agency from the testimony offered, the refusal
of the company to be bound by the acts of such agent, would leave

the plaintiff in this case without the title necessary to support the pretended grant to the Bay State Gas Company. A refusal, even though unlawful, of the corporations to convey to the plaintiff what he says in his contract with the defendant they had conveyed, would negative the plaintiff's assertion of title. The plaintiff not only was without the title that he covenanted that he possessed and sold to defendant, but the contract which he actually had with the corporations owning the patent was an elaborate and specific one, which was utterly inconsistent with the assertion of the plaintiff, that he had "purchased the right to vend, use and manufacture acetylene gas in Massachusetts under certain patent rights," etc. Besides other restrictive conditions in this contract, there was a positive covenant against assignment, forbidding the very thing which the plaintiff had undertaken to do in his contract with defendant. Whether Dickerson, as agent of the patent-owning corporations, was authorized to waive this and other conditions of the written contract, might be a question between the plaintiff and such corporations, but neither the defendant nor the Bay State Gas Company was privy to such contract of waiver, and were not concerned therein. The patent-owning corporations might or might not recognize the authority of this agent, and the plaintiff might or might not succeed in showing that he had an enforceable demand against them. However this might be, plaintiff never was in the situation to make good his statement, that he had purchased and possessed the thing he agreed to sell, either by his original contracts with the corporations, or by an execution of the new contracts which it is alleged Dickerson agreed to make. The error of the contention of the plaintiff, is in confusing this case with a suit against a principal, on a contract made by one whom it has held out by a course of business as its agent. It is not sought in this suit to fix a liability on such a principal, by showing that the contract, on which suit is brought, was made by an authorized agent.

No offer of testimony was made by the plaintiff, tending to show that he had the title he was required to have, by his contract with the defendant. In fact, the offers made and refused by the learned judge of the court below, implied the want of such requisite title in the plaintiff.

For these reasons, I think the judgment of the court below should be affirmed.