## EVANS & Another *v.* PIKE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

Argued April 22, 1886.—Decided May 10, 1886.

In Louisiana a gratuitous donee of land bought by the donor on credit at a sheriff's sale on execution, and still subject to the judgment and liable to an execution either on that judgment or on the bond given for the purchase-money, who is liable for the charges on the land but is not in possession, is not entitled to the delay and formalities of the hypothecary action.

In Louisiana, as in the States where the common law prevails, a person having an interest in mortgaged premises sold under a foreclosure who was not made a party to the proceedings, cannot obtain a judgment dispossessing the purchaser without redeeming or offering to redeem the property by paying the mortgage debt; and the proper remedy in such case, for such person suing in the courts of the United States in that District, is by bill in equity to redeem the property, and not by an action at law.

A charge to the jury which, though incorrect, does no injury to the excepting party, is not sufficient ground for setting aside the judgment.

This was a petitory action in the nature of an action of ejectment at common law. The case is stated in the opinion of the court. A former hearing of the cause is reported in *Pike* v. *Evans*, 94 U. S. 6.

*Mr. William Grant*, for plaintiffs in error, submitted on his brief, in which were cited: *Robert* v. *Brown*, 14 La. Ann. 597; *Ballio* v. *Poisset*, 8 Martin N. S. 337; *Smith* v. *McMicken*, 3 La. Ann. 319; *Ford* v. *Douglas*, 5 How. 143; *Jackson* v. *Ludeling*, 21 Wall. 616.

*Mr. John A. Campbell*, for defendant in error, cited: *Stockton* v. *Downey*, 6 La. Ann. 581; *McEnery* v. *Pargoud*, 10 La. Ann. 497; *Dufour*. v. *Camfranc*, 11 Martin La. 607, 610; *Donaldson* v. *Rouzair*, 8 Martin La. N. S. 162; *Dearmond* v. *Courtney*, 12 La. Ann. 251; *Taylor* v. *Huey*, 11 La. Ann. 614; *Seawell* v. *Payne*, 5 La. Ann. 255; *Coiron* v. *Millaudon*, 3 La. Ann. 664; *Mullen* v. *Follain*, 12 La. Ann. 838; *Fulton* v. *Fulton*, 7 Rob. La. 73; *Wright* v. *Bank of the United States*, 7 La. Ann. 123; *Nougué* v. *Clapp*, 101 U. S. 551; *Griffith* v. *Bogert*, 18 How. 158; *Harding* v. *Harding*, 4 Myl. & Cr. 514; *Requa* v. *Rea*, 2 Paige, 339; *Wood* v. *Mann*, 3 Sumner, 318; *Miller* v. *Sherry*, 2 Wall. 237; *Clarkson* v. *Read*, 15 Gratt. 288; *Drouet* v. *Rice*, 2 Rob. La. 374; *Holroyd* v. *Wyatt*, 2 Collyer, 327; *Proctor* v. *Farnam*, 5 Paige, 614; *Campbell* v. *Holyland*, 7 Ch. D. 166; *Barlow* v. *Osborne*, 6 H. L. Cas. 556; *Jeter* v. *Hewitt*, 22 How. 352; *Johnson* v. *Waters*, 111 U. S. 640; *Gillespie* v. *Cammack*, 3 La. Ann. 248; *Williams* v. *Close*, 12 La. Ann. 873; *Conrad* v. *Patzelt*, 29 La. Ann. 465; *Rowly* v. *Kemp*, 2 La. Ann. 360; *Washburn* v. *Green*, 13 La. Ann. 332.

Mr. Justice Bradley delivered the opinion of the court.

This is a petitory suit brought by Marie P. Evans and her husband, the plaintiffs in error, to recover a plantation of 1911 acres, called the Richland plantation, situated in the parish of West Feliciana, near Baton Rouge, in the State of Louisiana. The action was originally commenced against William S. Pike, and is continued against his widow and heirs, the defendants in error. The plaintiffs claim the property under a gratuitous donation made by Ackley Perkins to his niece, the said Marie P. Evans (then Marie Linton), by act of donation dated September 5, 1861. The title of the defendants is based on a judgment of the second district court of West Feliciana, rendered 18th February, 1859, for the sum of $16,890.25, with interest, in favor of one Eliza C. Johnson, against J. & H. Perkins, upon mortgage notes given by them for the purchase of the plantation. An execution was issued on this judgment, and the property failing to bring two-thirds of its appraised value, it was sold on the 3d of August, 1861, on twelve months' credit, pursuant to the Code of Practice of Louisiana; and the said Ackley Perkins, a brother of the mortgagors, became the purchaser, and to secure the payment of the purchase money he gave a twelve months' bond for $30,695.80, with interest at ten per cent. per annum, with two sureties. This bond contained a declaration of mortgage on the property sold, and an acknowledgment that it was to have the force of a final judgment, but it was not recorded. This was about one month prior to the donation made by Ackley Perkins to the plaintiff. The twelve months' bond not being paid, an execution was issued upon it on the 10th of October, 1865, and under this execution the property was sold on the 6th of January, 1866, and William S. Pike, one of the sureties of Perkins on the bond, to protect himself, became the purchaser for the sum of $46,725, received a deed from the sheriff, and took immediate possession of the premises, and continued in possession until the commencement of this suit in October, 1871, a period of five years and nine months; and he and his heirs have been in possession ever since.

The defendant, William S. Pike, amongst other things,

interposed the plea of prescription of five years, under article 3543 of the Revised Civil Code, being a re-enactment of the statute passed March 10, 1834, which declares that "all informalities connected with, or growing out of, any public sale made by any person authorized to sell at public auction, shall be prescribed against by those claiming under such sale, after the lapse of five years from the time of making it, whether against minors, married women, or interdicted persons."

At the first trial of the cause, the plaintiffs undertook to rebut this plea by showing that the sheriff did not actually seize the property, and the Circuit Court held that this defect was not one of the informalities cured by the prescription. On writ of error from this court we held otherwise, and reversed the judgment. *Pike* v. *Evans,* 94 U. S. 6. Of course, we must have held that the sheriff was authorized to sell the property at public auction, for that is necessary in order to maintain the plea of prescription in such a case.

A second trial has since taken place, and it does not appear by the record that any attempt was made to show a want of seizure by the sheriff. His return to the writ of execution shows that he did seize the property. The plea of prescription, however, was not withdrawn by the defendants, but was still relied on; and the judge, besides charging the jury that if Pike was in possession of the plantation for a period of five years, and purchased the same from a person authorized to sell at public auction, any informality connected with, or growing out of, the sale was prescribed, went on to charge further, that, under the terms of the decision of the Supreme Court in this case, the prescription of five years, if proved, was decisive of the controversy; operated as a bar to the plaintiffs' action, and gave to the defendants a title by prescription against the plaintiffs. To this instruction the plaintiffs excepted, and the substantial ground of their exception was, that the prescription of five years only cures defects and informalities in a sale, and not defects in the title itself, which, according to the laws of Louisiana, can only be cured by a prescription of ten years of possession in good faith and under a just title.

But even if this objection were well founded, a question

would still arise whether by the sheriff's sale William S. Pike did not acquire a good title as against the plaintiffs? For, if he did, prescription, except in reference to informalities of the sale, was not necessary to his defence, and the charge could not injure the plaintiffs. It is necessary, therefore, to examine this question.

The objection made by the plaintiffs to the title conferred by the sheriff's sale is, that the plaintiff, Marie P. Evans, was not made a party to the proceedings and not served with notice, though donee of the property, and a third possessor.

The situation of the property at the time of the sale was as follows: On the 18th of February, 1859, it became subject to Eliza C. Johnson's judgment for purchase money. On the 3d of August, 1861, by virtue of an execution on this judgment, it was sold to Ackley Perkins on a credit of twelve months, and Perkins gave a twelve months' bond for the purchase money. This sale was made in pursuance of a law of Louisiana which authorizes a sheriff to sell property on execution at twelve months' credit if unable to sell it for cash at two-thirds of its appraised value. La. Code Practice, Art. 680, 681. At such sale on credit, the purchaser is required to furnish good and sufficient joint security and special mortgage on the property sold, bearing interest at the same rate as the judgment. Art. 681. The Code further provides that if the bond is not paid at maturity, "the clerk who first issued the order of seizure shall, on the demand of the judgment creditor, or any other person interested, and on the bond being delivered to him, issue an execution for the amount, both against the purchaser and his surety, in the same manner as on a final judgment; and this execution shall be directed to the sheriff, to be carried into effect." Art. 719. "If the amount of the bond, with interest and costs, be not paid to him on demand, it is the duty of the sheriff, under this execution, to seize immediately the property of the purchaser, or of the surety, or both, to the amount of the debt and costs, and to sell it for ready money." Art. 720.

The course thus prescribed was followed in the present case. But the sale thus made on credit was not a satisfaction of the judgment, which still remained in full force: for, if the

bond was not paid at maturity (as it was not), execution might be issued either on the judgment, or on the bond, at the option of the judgment creditor. The land still remained subject to the judgment. The execution on the bond had merely this advantage, that it could be levied on the property of the sureties as well as on that of the principal; but the property for which the bond was given remained subject to the debt and to the lien of the judgment. A sale of the land under an execution issued on the judgment, or on the bond, would relate back to the judgment for its force and effect. *Trescott v. Lewis*, 11 La. Ann. 184; *Bahain v. Langfield*, 16 La. Ann. 156, 157; *Union Bank v. Stafford*, 12 How. 327, 339, 340. As Ackley Perkins paid nothing on his purchase, but merely gave the twelve months' bond, he could do nothing to defeat the continued lien of the judgment. Though a purchaser from him in possession might be entitled to be proceeded against by a hypothecary action, a mere gratuitous donee would take the property subject to all charges in the same manner as the donor held it. Article 1551 of the Civil Code declares: "The property given passes to the donee with all its charges, even those which the donor has imposed between the time of the donation and that of the acceptance"; in other words, the donee takes *cum onere*, and undoubtedly with implied notice. This was manifested in the present case by the conduct of the parties at the time of passing the act of donation, which declares that they "dispensed with the production of a certificate from the recorder of the parish as is required by article 3328 of the Civil Code." This means that the donee accepted the property at her own risk, subject to all charges thereon, and amounted to a voluntary assumption by her of those charges, so far as they were specific and not general liens.

It is the general law, it is true, that a third possessor of hypothecated property must be proceeded against by the hypothecary action, which requires thirty days' demand of the principal debtor, and ten days' subsequent notice to the third possessor to pay the debt or give up the property. Article 68 of the Code of Practice declares that "if the hypothecated property be neither in the possession of his debtor nor of his

heirs, but in that of a third person, the creditor has his action against that person, in order to compel him either to give up the property or to pay the amount for which it stands hypothecated." And this is the ordinary rule as to third possessors, whether the hypothecation be by act of mortgage or in any other form. A judgment creditor, whose claim bears against a piece of property transferred to a third party who does not assume to pay the judgment, must proceed by hypothecary action. *Massey* v. *Ferich*, 24 La. Ann. 28. But where the vendee assumes the payment of a mortgage as a part of the purchase price, the mortgagee may proceed against the mortgagor without reference to the sale made by him. *Père* v. *Goldman*, on appeal by Sell, the third possessor, Louque's Dig. 442, pl. 9. A purchaser of property subject to a mortgage debt, who promises, or is personally liable, to pay the debt, is held not to be a third possessor, entitled to the demand and notice requisite in a hypothecary action. *Duncan* v. *Elam*, 1 Rob. La. 135; *Boissac* v. *Downs*, 16 La. Ann. 187.

From these authorities we infer the rule to be, that a gratuitous donee, even when in possession, being liable for the charges on the land, is not entitled to the delay and formalities of the hypothecary action. But, if this be not true in all cases, we think it must be true in a case like the present, where the party is not in possession, and has accepted a donation of land from a person who bought it on credit, the land being still subject to the judgment under which it was sold, and liable to an execution either on such judgment or on the bond given for purchase money.

In this case the plaintiffs were not in possession. As we understand the record, no change of possession took place at the time of the donation; but the plaintiff Marie, the donee, went immediately abroad, out of the country, and Ackley Perkins remained in possession until the sale to William S. Pike, in January, 1866, under the execution on the twelve months' bond. Mrs. Johnson, the judgment creditor, not receiving any fruit of her judgment, finds herself, at the close of the war, obliged to resell the property. She finds no one in possession but Ackley Perkins. She follows the directions of

the Code, and an execution is issued on the twelve months' bond. William S. Pike is obliged to purchase the property to protect himself as surety on the bond. Under these circumstances, there is certainly no strong equity in favor of the plaintiff's claim. She never paid a cent for the property; her donor never paid a cent for it; the judgment remains unpaid; the surety is obliged to buy to save himself; and now the plaintiff, after nearly six years have passed away, seeks to deprive Pike of possession, without offering to reimburse him for what he has paid (or bound himself to pay) to relieve the property from the incumbrance resting upon it, and to satisfy the debts of the plaintiff's donor, and of the parties against whom the judgment was originally rendered. There could not well be a case more destitute of equity.

Suppose the plaintiffs were entitled to notice of the application for executory process, or to some formality in lieu of notice, does that make the sale so absolutely void, that she can recover the property without restoring, or offering to restore, to Pike or his heirs, what he has paid?

In the English system, followed in most of the States, a person having an interest in mortgaged premises sold under a foreclosure, and not made a party to the proceedings, merely retains his equity of redemption, that is, a right to redeem the property by paying the amount due on the mortgage. He cannot turn the purchaser out of possession, without redeeming, or offering to redeem, the property by paying the mortgage debt. This rule is founded in such manifest justice that we should be surprised not to find it in some form in a system of law drawn from the same source as that of English equity. An examination of the Louisiana decisions shows that we are not mistaken in our anticipations.

In *Dufour* v. *Camfranc*, 11 Martin, 607, 615, the plaintiff claimed title to certain slaves; the defendant pleaded that he had purchased them at sheriff's sale upon an execution issued on a judgment against the heirs of one Dufour, and that plaintiff was one of those heirs. It was replied, amongst other things, that the judgment was null, because plaintiff was not cited. The court said: "Another question still presents itself.

It has been proved that the proceeds arising from the sale of the slaves were applied to the discharge of the judgment debts of the plaintiff, and the court is of opinion that he cannot recover in this suit until he repay the money." "Nothing could be more unjust than to permit a debtor to recover back his property, because the sale was irregular, and yet allow him to profit by that irregular sale to discharge his debts."

In *Donaldson* v. *Rouzan*, 8 Martin, N. S. 162, the court said: "The judge below thought the sheriff's deed, without a judgment, did not pass the right of the defendant in execution to the purchaser, and in that opinion we concur. But he thought that, as the purchase money had been applied to the benefit of the estate of the plaintiff's testator, she ought not to recover the lot, without returning the price paid for it. In the view taken by the judge below we also concur;" and the judgment was affirmed.

In *Stockton* v. *Downey*, 6 La. Ann. 581, which was a suit to recover property sold under executory process, the court say: "We do not think that judicial sales ought to be disturbed, unless at the instance of a party who has a right to sue for their rescission or nullity, and who can show an injury resulting to him from the sale, as well as an interest in the result of the suit, and without a previous proffer of full indemnity to the *bona fide* parties, whose interests are to be affected by the judgment." The sale was sustained.

In *Taylor* v. *Huey*, 11 La. Ann. 614, which was a petitory action for a tract of land, the plaintiff claimed under a deed from one Fountain, dated in August, 1846, but not recorded until May, 1847; the defendant claimed under a sheriff's sale made in January, 1847, and deed recorded in February, 1847; the sale being made by virtue of executory process issued upon an act of mortgage executed by Fountain in December, 1845, and recorded November, 1846, after the execution of the deed from Fountain to Taylor. The court concludes its judgment as follows: "But conceding that Taylor could be heard to impeach the title of Huey thus acquired, he has not laid a foundation for doing so by the allegations of his petition. He has made no tender to the defendant of the mortgage debt which

burdened the land, and was only discharged by the sale he seeks to treat as a nullity." Judgment for defendant affirmed.

We think that these decisions are applicable to the present case, and govern it, and that the remedy of the plaintiffs, in the United States Court, if they have one, is a bill in equity to redeem the property, and not an action at law. Under the law of Louisiana, as we understand it, the possessory title of the defendants cannot be disturbed, without returning to them the amount paid by their ancestor in exoneration of the property and in satisfaction of the original judgment of Mrs. Johnson. For the purposes of the present action, their title is good and valid, and they were entitled to a verdict, irrespective of the question whether they and their predecessor, William S. Pike, could maintain title by prescription or not. The charge of the judge, therefore, even if incorrect, did no injury to the plaintiffs.

The judgment of the Circuit Court is

*Affirmed.*