ALWART BROS. COAL CO. v. ROYAL COLLIERY CO. (two cases).

(Circuit Court of Appeals, Seventh Circuit. January 6, 1914.)

Nos. 1999, 2022.

1. SALES (§ 62*)—CONTRACT—CONSTRUCTION.

A contract for the purchase and sale of coal provided that defendant coal company purchased from plaintiff colliery company approximately 20,000 tons at $1.07 per ton to be shipped in approximately equal monthly quantities between July 25, 1911, and March 31, 1912, as ordered by the buyer. The colliery company agreed to sell the coal from its mine, and the coal company as the purchaser agreed to buy the coal as provided;

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the contract also providing the method of payment and certain excuses for nonperformance and for the purchase of coal in the open market in case of a failure of the seller to perform. *Held*, that the contract contemplated that the buyer was to have and should take approximately 2,500 tons of coal in each of the eight calendar months embraced in the contract, unless excuse arose as specified, thus making each monthly requirement severable for performance.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 171–179; Dec. Dig. § 62.*]

2. APPEAL AND ERROR (§ 977*)—NEW TRIAL—DENIAL.

Error cannot be assigned in the Circuit Court of Appeals on the overruling of a motion for a new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3860–3865; Dec. Dig. § 977.*]

3. APPEAL AND ERROR (§§ 259, 263*)—INSTRUCTIONS—REMARKS TO JUDGE—NECESSITY OF EXCEPTIONS.

Assignments of error directed to various portions of the instructions and to remarks of the judge in the presence of the jury cannot be reviewed where no adequate exceptions are preserved thereto.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1498–1502, 1516–1523, 1525–1532; Dec. Dig. §§ 259, 263.*]

4. EVIDENCE (§ 129*)—MATERIALITY—ISSUES.

In an action for the purchase price of coal delivered under a contract, evidence of sales of coal, made by the plaintiff to the buyer during the period covered by the contract which were not within it, was properly admitted to prove that a credit claimed by the coal company was not applicable to the contract in suit, but to such other sales.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 388–393, 395–398; Dec. Dig. § 129.*]

5. APPEAL AND ERROR (§ 1052*)—REVIEW—RECEPTION OF EVIDENCE—PREJUDICE.

Where the verdict is in accord with the undisputed evidence, error, if any, in the reception of evidence, will not be deemed prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4171–4177; Dec. Dig. § 1052.*]

6. SALES (§ 371*)—CONTRACT—MONTHLY DELIVERIES—NECESSITY OF TENDER.

Where a contract for the sale of coal required the seller to deliver, and the purchaser to take, approximately 2,500 tons during each of the calendar months as specified in the contracts as ordered by the buyer, the seller was not required to tender such amounts during particular months included within the contract period in order to entitle it to recover for the buyer's failure to order the amount specified per month.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1086–1088; Dec. Dig. § 371.*]

7. TRIAL (§ 252*)—REQUESTS TO CHARGE—APPLICABILITY TO EVIDENCE.

A request to charge not supported by the evidence nor in accord with the undisputed facts was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

8. SALES (§ 421*)—BREACH OF CONTRACT—INSTRUCTIONS.

Where a contract for the sale of coal required the purchaser to accept approximately 2,500 tons during each month of the contract period unless excused by specified conditions making the contract as to each monthly quantity severable for performance, an instruction that the seller's consent to delay shipments amounted to a waiver of its right to insist on the buyer's acceptance of the regular monthly amount during the months prior to January 1, 1912, and, if such waiver appeared, it was the seller's duty to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

deliver after that date such amount as with the amount shipped thereto would make up the full contract quantity, was properly refused.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1203; Dec. Dig. § 421.*]

9. SALES (§ 416*)—CONTRACT—BREACH—EVIDENCE.

Where a contract for the sale of coal required the seller to deliver, and the buyer to accept, approximately 2,500 tons per month from July 25, 1911, to March 31, 1912, and in an action for the seller's breach of the contract it appeared that the contract quantity had not been furnished as ordered between January 1 and February 20, 1912, and there was no proof that any of the reasons provided in the contract which would relieve the seller of liability had occurred, the seller's liability for damages was for the jury, notwithstanding the buyer placed orders in excess of the monthly contract quantity during such period and there was a disagreement as to the contract requirements, and hence the exclusion of evidence to prove the fact and amount of the buyer's damage was error.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1171, 1172; Dec. Dig. § 416.*]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; Francis M. Wright, Judge.

Actions by the Royal Colliery Company against the Alwart Brothers Coal Company. Judgment for plaintiff in each case, and defendant ·brings error. Judgment in first case affirmed, and judgment in the second case reversed, and case remanded, with directions to grant a new trial.

In both of these suits at law Royal Colliery Company (hereinafter referred to as "Colliery Company") recovered judgment against Alwart Bros. Coal Company (hereinafter referred to as "Coal Company"), and the Coal Company, as plaintiff in error, seeks reversal of each judgment under writs of error respectively, Nos. 1999 and 2022.

Both suits are founded on alleged breach of a contract in writing between the parties, made July 25, 1911, for purchase and sale of coal, for "approximately 20,000 tons," as four-sevenths of "the requirements of school districts" of Chicago mentioned, at $1.07 "per ton of 2,000 pounds," to be shipped "in approximately equal monthly quantities between July 25, 1911, and March 31, 1912, as ordered by the purchaser." The Colliery Company is designated as the "seller" and agrees to sell the coal from its mine at Virden, Ill., and the Coal Company, "as the purchaser, agrees to buy coal" as provided. Other terms of the contract relating to the controversy read as follows:

"Payments.—Settlements shall be made by purchaser in cash at office of seller at Virden, Ill., on or before the 20th day of each calendar month for fifty per cent. of the value of all coal shipped during the previous month. The remaining fifty per cent. will be paid on the 10th day of the second month following the month in which shipments are made. Upon failure of purchaser to pay for any fuel within the time stipulated, the seller may at its option, to be exercised any time prior to payments therefor in full, on five days written notice, suspend further shipments until such payment is made, or treat the contract for any or all unshipped fuel as broken by purchaser. * * *

"This contract is subject to cancellation should the works of either of the parties hereto be destroyed by fire or other accident, and to interruption in delivery should they be closed or partially closed temporarily for repairs, strikes, lockouts, deficient car supply, or other unavoidable reasons. In the event of such interruption to the works of the shipper it may prorate shipments on all existing contracts during such interruption.

"In the event the seller herein shall at any time fail to comply with any

of the terms and conditions contained in the preceding paragraph of this contract, the seller in such case and only in such case agrees to protect, indemnify and hold blameless the purchaser under clauses L and N of the purchaser's general contract with the Board of Education of the City of Chicago, which clauses read as follows:

"'(L) Purchase of Fuel on Open Market.

"'Should the contractor, from any cause or at any time, fail, in the judgment of the business manager, to promptly deliver fuel, or, as shown by the reports of the engineering firm which does the testing for the board of education, fail to deliver fuel of the kind or quality theretofore ordered to be delivered to any of the public school buildings, said business manager shall have the right, either personally or through others whom he may designate, to purchase fuel to supply the want of any school building or buildings which the contractor has failed to supply in accordance with the order of said business manager. Said fuel so purchased by said business manager to. be of any grade or quality which can be obtained, and shall be purchased at the expense of the contractor so defaulting. The said business manager shall deduct the difference in cost, if any, between the price thus paid and the contract price, from any moneys due or accruing to the contractor from the board under the terms of the contract.'"

Clause N is inapplicable to the controversies.

(1) In No. 1999, the suit was brought by the Colliery Company (as a foreign corporation) in the federal court, to recover: (a) For coal delivered in January and February, 1912, under the contract, and (b) for damages for alleged failure of the purchaser to take the agreed amount of coal during the prior months of 1911. On submission of the issues therein to a jury, the Colliery Company recovered a verdict against the Coal Company embracing both. of the above claims.

(2) In No. 2022, the suit was instituted by the Coal Company against the Colliery Company, in the municipal court of Chicago, for recovery of damages for alleged failure of deliveries of coal in the months of January, February, and March, 1912; was removed to the District Court and issue joined therein. It "was consolidated for the purpose of trial" with the other cause (No. 1999); but treated as independent thereof for separate verdict upon such issue, which was neither pleaded nor treated by way of set-off in No. 1999. On conclusion of the evidence thus taken jointly, the trial court directed a verdict in favor of the Colliery Company (defendant) in No. 2022.

The material facts in reference to performance and the questions of law presented in each case are stated in the opinion.

John A. McKeown and Defrees, Buckingham, Ritter & Eaton, all of Chicago, Ill., for plaintiff in error.

Frank Crozier, of Chicago, Ill., for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). [1] The main controversy between the parties, in both of these suits upon the contract of purchase and sale of coal, rests on an interpretation of the contract terms, with the facts in reference to performance and nonperformance respectively undisputed. Upon that inquiry we believe the contract to be plain in its provisions that the purchaser was to have and take approximately 2,500 tons of coal in each month of the eight calendar months embraced in the contract—unless excuse arose. as specified—thus making each monthly requirement severable for performance, as construed by the trial court in the submission of the issues in the original suit, No. 1999. This interpretation of the contract is applicable as well for determination of the issues in the other suit.

[2, 3] 1. No. 1999 is the suit of the Colliery Company, as seller,

upon the alleged causes of action: (a) For the purchase price of coal delivered in January and February, 1912, and (b) for damages for failure of the purchaser to take the agreed amounts of coal in each of the prior months embraced in the contract. The verdict awarding recovery upon both of these grounds is supported by facts in evidence, and we believe the assignments of error present no cause for reversal, under the contract obligations as above interpreted. Error is variously assigned for overruling motions for a new trial, although it is well settled that error is not assignable thereupon. Several assignments are directed to various portions of the instructions given to the jury and for remarks of the trial judge "in the presence of the jury," but each is without force for the reason that no adequate exceptions are preserved for review thereof, and were it assumed (without so intimating) that any of such rulings were objectionable, no review is authorized. The only assignments of error entitled to consideration, therefore, are those designated as third, eleventh, and twelfth, in the transcript of record.

[4, 5] (1) The third assignment relates to the admission of evidence of sales of coal made by the Colliery Company to the Coal Company, during the period covered by the contract, which were not within the contract sales in suit, and other items of evidence, all alleged to be "not material to any issue before the jury" and tending "to confuse the jury" and induce an "excessive verdict." It is contended on behalf of the defendant in error that the items of evidence referred to were admissible to disprove a credit claimed by the Coal Company in the case at bar for a payment of $1,100, which was not applicable to the contract in suit, but to these other sales; and the record appears to support its reception on that ground. If immaterial in any measure, however, we understand the verdict to be in accord with undisputed facts in evidence, so that error in such reception cannot be deemed prejudicial, and in either view the assignment must be overruled.

[6, 7] (2) The eleventh assignment is for denial of instructions requested, in substance: (a) That no breach of the contract was committed by the Coal Company in its failure to order "approximately 2,500 tons of coal per month" unless tenders of such amounts were made by the Colliery Company "during the months previous to January 1, 1912"; and (b) that the Colliery Company "consented to and acquiesced in the manner of performance" on the part of the Coal Company "and thereby waived its right to insist on the defendant taking the regular monthly amount of coal under the contract." We understand the first-mentioned proposition of law to be untenable, and that the last-mentioned request was neither supported by evidence nor in accord with the undisputed facts.

[8] (3) In the twelfth assignment error is predicated on denial of an instruction as requested, in substance, that consent on the part of the Colliery Company to delay in shipments amounted to a waiver of its right to insist on the taking by the purchaser of "the regular monthly amount of approximately 2,500 tons during the months up to January 1, 1912," and that, if such waiver appeared, it became the duty of the Colliery Company to deliver "after January 1, 1912, such amount of coal as, with the amount shipped previous to that date, would make

up the full amount of approximately 20,000 tons." Neither this assignment nor the request referred to is discussed or mentioned in the brief for plaintiff in error, and we are not advised of its assumed bearing upon the issues in No. 1999, nor whether it is relied upon for reversal; but, whatever may have been contemplated as making the requested instruction applicable, we believe no error was committed in its rejection, as it was, on any theory, inconsistent with the foregoing interpretation of the contract.

All of the assignments of error are therefore overruled, and various other propositions which are set forth in the argument of counsel, not embraced in these assignments, are not involved for consideration. It may justly be remarked, however, that the verdict appears to be supported by the evidence, under the pleadings.

[9] 2. In No. 2022, removed from the municipal court of Chicago, the issue involved was a claim of the Coal Company for · damages against the Colliery Company, for alleged failure to make complete deliveries of coal, as provided by the contract, in January, February, and March, 1912. While a large portion of this claim was disproved by the evidence under the foregoing interpretation of the contract, it nevertheless appears in evidence that orders placed by the Coal Company between January 1st and February 20th were not supplied at the rate and extent of 2,500 tons per month as required by the contract, and that the shortage therein presented an issue of default on the part of the seller. If not excused by inability to obtain cars for shipment or other cause within the contract terms, the Colliery Company became liable for damages for such nondeliveries up to February 20th, as above mentioned, and the issue thereupon was for determination by the jury. Evidence was offered by the plaintiff in error and excluded by the court tending to prove the fact and amount of damages thus caused, and we believe error to be well assigned, both upon such exclusion of evidence and upon the final direction of a verdict therein in favor of the defendant below. Neither the fact that the plaintiff below placed orders in excess of 2,500 tons per month during such period, nor the subsequent disagreement of the parties as to the contract requirements, can· serve to defeat such right to have the above-mentioned issue of fact submitted to the jury.

In conformity with the foregoing opinion, the first-mentioned judgment, in No. 1999, is affirmed; and the judgment in No. 2022 is reversed, and the cause so designated is remanded to the District Court, with direction to grant a new trial.