### N. K. FAIRBANK CO. et al. v. CANAL–COMMERCIAL TRUST & SAVINGS BANK.

(Circuit Court of Appeals, Fifth Circuit. February 2, 1923. Rehearing Denied March 1, 1923.)

No. 3890.

1. **Appeal and error** ⊜997(3)—**Directed verdict upheld, if supported by any legal evidence, where both parties request direction.**

  Where both parties request a directed verdict, the direction of a verdict will be upheld on review, if there is any legal evidence to support it.

2. **Banks and banking** ⊜154(8)—**Evidence held sufficient to warrant finding that bank was justified in paying out funds on indorsement of plaintiff's branch officer.**

  Where a foreign company granted authority to the officers of its local branch to indorse and sign checks and make deposits as its attorneys, of

which it notified defendant bank of deposit, in an action by the company against the bank for the recovery of money embezzled by one of the branch officers, evidence *held* sufficient to support a finding that checks indorsed by such officer were legally received for deposit by defendant bank, and that it was justified in paying out any funds so deposited on checks signed by such officer and countersigned as required by plaintiff's by-laws of which the defendant had notice.

**3. Appeal and error ⊚═►1052(8)—Technical errors not ground for reversal.**

Any technical errors in the reception of testimony do not constitute ground for reversal, where the other evidence demanded a directed verdict for appellee.

In Error to the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit by the N. K. Fairbank Company and another against the Canal-Commercial Trust & Savings Bank. Judgment for defendant, and plaintiffs bring error. Affirmed.

P. M. Milner, of New Orleans, La., for plaintiffs in error.

Edwin T. Merrick and Ralph J. Schwarz, both of New Orleans, La. (Merrick & Schwarz, of New Orleans, La., on the brief), for defendant in error.

Before BRYAN and KING, Circuit Judges.

KING, Circuit Judge. This suit was brought by the N. K. Fairbank Company and the Guarantee Company of North America, as its assignee and subrogee, against the Canal-Commercial Trust & Savings Bank, to recover $15,000, with interest.

The record discloses that the Fairbank Company had been for years transacting business in Louisiana and adjacent states from its office in New Orleans, La., which was styled the "New Orleans Sales Branch," and at times the "New Orleans Branch." It had prior to the year 1914 opened an account with the defendant bank in the name of the N. K. Fairbank Company. It had granted authority to its legal representatives in New Orleans, Eugene Finkenauer, J. C. Copping, and E. H. Zeller, to indorse and sign in connection with the Fairbank Company's account in said bank. On January 20, 1914, it wrote a letter to the cashier of said bank advising of the revocation of said authority and inclosing a certified copy of resolutions which said letter stated authorized—

"the issuance of similar powers of attorney in favor of Messrs. Eugene Finkenauer, Volney H. Post, and James Gould, Jr., severally to indorse checks of the head office for deposit, and any two of them jointly to sign checks upon the account of the N. K. Fairbank Company, New Orleans Sales Branch, in the Canal Bank & Trust Company."

Said power of attorney was also inclosed. Specimen signatures of Post and Gould were attached to said letter, which stated that the bank was already familiar with the signature of Finkenauer. These specimen signatures were given as follows:

"Mr. Post will sign 'The N. K. Fairbank Company, V. H. Post, Attorney.' Mr. Gould will sign 'The N. K. Fairbank Company, J. Gould, Attorney.'"

Said resolution, and the power of attorney drawn under its authority, constituted said named persons attorneys of said Fairbank Company—

"for it and in its name, place, and stead, with power to any one of them upon receipt of checks of the head office to indorse the same for deposit to the credit of the New Orleans Branch in the Canal Bank & Trust Company of New Orleans, Louisiana, and with power to any two of them to draw checks against the account of said company in the Canal Bank & Trust Company to the limit of amount at credit of said company in said bank, and the proceeds to be received and apply for the use of said company and for such purposes as the said company should direct."

On May 21, 1914, the Fairbank Company wrote to said defendant from Chicago, inclosing a certified copy of its by-laws regulating accounts with banks, and revoking and canceling all previous authorizations, for signing and countersigning, inconsistent therewith. The letter stated:

"The following are the names of persons authorized to sign and countersign in the name of this company checks upon the company's New Orleans Sales Branch account with your bank."

It was stated that Finkenauer would sign or countersign as manager, Post as chief clerk, and Gould as cashier. The pertinent provisions of the inclosed by-laws are as follows:

"All checks, drafts, and bills of exchange shall, except as hereinafter expressly provided, be signed and countersigned by two different persons duly authorized thereto in accordance with this by-law. * * *

"The manager, cashier, and chief clerk of each of the company's branches are authorized to sign and to countersign checks upon funds of the company deposited for the use of the branch with which they are connected. They may similarly sign and countersign drafts and bills of exchange upon customers for goods sold, the proceeds of all such instruments to be placed to the credit of the company."

These directions were repeated in October, 1916. Said Canal Bank & Trust Company has since said time become the Canal-Commercial Trust & Savings Bank.

The branch of the Fairbank Company at New Orleans was a selling branch, selling and collecting for sales. It was estimated that its business amounted to about $200,000 a month; the mass of the business done was conducted through the Whitney-Central National Bank of New Orleans. It was not shown in what name said last deposit was made, nor by whom checks upon it were authorized to be drawn. It appears that large numbers of checks for sales made by the New Orleans Branch were collected by said branch office; that said checks were drawn by the makers thereof to the order of the Fairbank Company. Said New Orleans office had been furnished with a rubber stamp by the head office of the Fairbank Company of Chicago, Ill., reading:

"Pay Canal-Commercial Trust & Savings Bank, New Orleans, Louisiana, or order. The N. K. Fairbank Company, New Orleans Sales Branch."

A number of said checks, aggregating at least $28,000, received from customers, were stamped with said rubber stamp and deposited in the account of the N. K. Fairbank Company in the defendant bank. In

addition, a number of checks were received from the head office in Chicago by the New Orleans office. These checks were, to the order of the N. K. Fairbank Company. They were indorsed by being stamped with said rubber stamp and deposited in the deposit account kept with the Canal-Commercial Trust & Savings Bank.

A large number of checks were drawn upon this account, which checks were on forms headed in large type, "The N. K. Fairbank Company," and beneath in small type, "New Orleans Sales Branch." A signature was printed at the foot of each check, "The N. K. Fairbank Company," on one line in large type, and below, in small type, "New Orleans Sales Branch," with places for the signatures of two officers. A number of checks were drawn against this account on said check forms, signed by two of the persons designated in said by-law, and the money paid by the defendant bank thereon. It was placed in the cash in the office of said New Orleans branch, and a large amount of it at different times, during the years 1916 to April, 1919, was abstracted by Gould.

The Guarantee Company had issued to said Fairbank Company its contracts of guaranty insurance ·in the sum of $15,000, guaranteeing the fidelity of Gould and other employees, on which said Guarantee Company was claimed to be liable, which sum it paid, and claimed to be subrogated pro tanto to any claim the Fairbank Company had against said defendant bank. The Fairbank Company assigned to it as such subrogee an interest in such claim to the extent of $15,000, and this suit is maintained jointly by said Fairbank Company and said Guarantee Company as such assignee and subrogee.

Said plaintiffs insist that the correspondence in January, 1914, between said Fairbank Company and said bank was a direction to said bank to open an account in the name, "The N. K. Fairbank Company, New Orleans Sales Branch;" that the powers conferred on Finkenauer, Post, and Gould were limited to indorsing checks of the head office, and to depositing the same to the credit of such an account, and to drawing checks against such account; that they had no authority to indorse any other checks for deposit in said bank, nor any authority to draw checks against any account other than one standing in the name, "The N. K. Fairbank Company, New Orleans· Sales Branch;" that the checks drawn "The N. K. Fairbank Company, New Orleans Sales Branch," did not authorize said bank to pay out funds credited on the account of "The N. K. Fairbank Company," and that said bank was liable to plaintiffs for the amounts received by said bank on said account paid out on said checks, or, having collected the checks, other than head office checks, deposited with it, on the indorsement of any of the persons named in said power of attorney, it had no authority to do so, or to pay out the funds so received, on checks drawn by said persons, and was liable to plaintiffs for the amounts so received by it, which exceeded the sum sued for.

The defendant bank pleaded that there had never been but one account opened in its bank by said Fairbank Company; that the communications between it and said company were not a request to open a new account, but related to the existing account standing in the name

of the N. K. Fairbank Company; that the words, "New Orleans Sales Branch," were no part of the name in which said account was to be kept, but merely a description of the business of said company to which said account related; that the authority conferred by said company on its agents at New Orleans, especially by the letter written on May 21, 1914, and by the by-laws therein inclosed, and those thereafter sent, gave to said designated agents authority to make said deposits and draw the checks drawn thereon; that the sums drawn went into the cash kept in the office of said company at New Orleans, and the defendant was not liable for its abstraction; also that defendant furnished to said Fairbank Company monthly statements showing the sums deposited in and drawn from said bank in each month; that said statements showed the account was standing in the name of the N. K. Fairbank Company; that said company knew the amounts of the head office checks sent to its New Orleans office and therefore knew what sums in excess thereof were deposited and drawn on said account, and was charged with notice that the deposits for which it is now seeking to charge defendant had been made, and were being checked against, by said New Orleans Branch.

[1] Each party requested the court to direct a verdict in its favor. While the plaintiffs, in their motion for a directed verdict, assigned reasons for such direction, no request was made for any submission to the jury or other course, if said motion was overruled. After such requests were made the court stated that he understood this to leave to him the decision on the facts. No dissent was made to this statement, and the court directed a verdict for the defendant. As both sides requested the court to direct a verdict, his direction will be sustained, if there is any legal evidence to uphold the verdict directed. Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654; Sena v. American Turquoise Co., 220 U. S. 497, 31 Sup. Ct. 488, 55 L. Ed. 559.

[2] We think there was sufficient evidence to warrant the court in directing a verdict for the defendant. Taking the letter of January 20, 1914, from said Fairbank Company to said bank, and its inclosures, we do not think they contain any request to the bank to open a new account to be styled "New Orleans Sales Branch," but refer to the existing account in said bank, and appoint certain persons to indorse and sign "in connection with the company's account in the" said bank. The power of attorney inclosed speaks of "the account of the said company in the" said bank, and speaks of depositing checks of the head office to the credit of the "New Orleans Branch," not using the phrase "New Orleans Sales Branch." We think this fairly refers to the existing account in the name of "The N. K. Fairbank Company" as representing the deposit to the credit of said New Orleans Branch.

Before the transactions complained of occurred, namely, on May 21, 1914, a copy of the by-laws was sent to said bank, advising it that the manager, cashier, and chief clerk of each of the company's branches are authorized to sign and countersign checks upon the funds of the company deposited for the use of the branch with which they are connected. They may similarly sign and countersign drafts and bills of exchange upon customers for goods sold, the proceeds of all such in-

struments to be placed to the credit of the company. The names of the manager, cashier, and chief clerk of the New Orleans Branch are stated. The testimony of the Fairbank Company was that its New Orleans Branch was a selling branch, selling and collecting for sales.

The checks which plaintiffs insist should not have been deposited in said account in said defendant bank represented collections for sales made through said branch. We therefore think the evidence supported a finding that said checks were legally received for deposit by said defendant bank, and that it was justified in paying out any .funds so deposited on checks signed and countersigned as required by said by-law. It is conceded that all checks paid by said bank were signed and countersigned by the officials and persons designated by the Fairbank Company.

We do not think that the words, "New Orleans Sales Branch," added in small letters below the name, "The N. K. Fairbank Company," were other than a convenient description of the office from which the check was issued; and they did not prevent such check from being a valid check on the only account which said bank had ever opened with said Fairbank Company. The letter of January 20, 1914, inclosing the signatures to be made by Post and Gould, refer as well to signatures to checks to be drawn on the account in the defendant bank as to indorsements. It is stated that checks drawn on the account spoken of as the New Orleans Sales Branch account will be signed by Mr. Post, "The N. K. Fairbank Company, V. H. Post, Attorney," and by Mr. Gould, "The N. K. Fairbank Company, J. Gould, Attorney." The words, "New Orleans Sales Branch," are not regarded as any part of the signature.

[3] If there was any error in the reception of the testimony of Dietze, objected to by the plaintiffs, it becomes immaterial, in view of the rulings above made, and need not be considered. Southern Oil Corp. v. Waggoner (C. C. A.) 276 Fed. 487, 490.

The judgment of the District Court is affirmed.

WALKER, Circuit Judge, did not sit in the above case, and took no part in its decision.