PETERSEN et al. v. WELLSVILLE CITY.

(Circuit Court of Appeals, Eighth Circuit.
July 6, 1926.)

No. 7073.

1. Contracts ⬦346(2)—Contractors to recover lost profits from repudiation before time for performance must plead and prove that they would have been ready and willing, but for repudiation.

For contractors to maintain action for loss of profits from other party's repudiation of contract before time for performance, they must plead and prove that they would have been ready and willing to have performed, if repudiation had not occurred.

2. Damages ⬦124(1).

Contractor agreeing to furnish labor or material, not being able to perform, suffers no loss of profits from other party refusing to proceed.

3. Appeal and error ⬦1068(3, 5).

Plaintiff not being entitled to recover, under the evidence, any error in giving or refusing instructions was not prejudicial to him.

In Error to the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Action by E. J. Petersen and another against Wellsville City. Judgment for defendant, and plaintiffs bring error. Affirmed.

Thomas Marioneaux, R. J. Hogan, Clarence M. Beck, E. A. Walton, T. D. Walton, and W. M. Nelson, all of Salt Lake City, Utah, for plaintiffs in error.

Barnard J. Stewart, Daniel Alexander, and Jesse R. S. Budge, all of Salt Lake City, Utah, for defendant in error.

Before LEWIS, Circuit Judge, and MUNGER, District Judge.

MUNGER, District Judge. The plaintiffs in error, E. J. Petersen and R. S. Petersen, entered into a written contract on July 28, 1920, with the defendant in error, Wellsville City, Utah, hereafter called city, to build for the city a large amount of concrete sidewalk, and to do the grading and other incidental work necessary to complete the contract, for an agreed price of $41,642.17. They brought this suit against the city to recover damages, alleging that the city had repudiated the contract. The jury returned a verdict for the city, and judgment was entered thereon. At the trial E. J. Petersen testified that he was the only party interested in the contract, and thereafter the case proceeded as if he alone had signed the contract with the city. It became a question of fact upon the trial of the case, whether the document produced on behalf of the plaintiffs in error, as the contract between the parties, embraced all of the terms of the contract that had been agreed upon, or whether the contract included another sheet of paper containing additional terms. If the plaintiffs in error's theory was correct, no time was stated for final performance on their part. They alleged that they were entitled to a reasonable time for the completion of the work, not less than one year from the date of the contract. If the city's theory was correct, the contract required the plaintiffs in error to complete the work within four months from the date of the contract. On March 22, 1921, the city council passed a resolution declaring the contract to be canceled, and soon afterwards let the work to others, who constructed the sidewalks.

One provision of the contract required the plaintiffs in error to begin work immediately. In their complaint they alleged that they were ready, willing, and able, from the date of the agreement until it was repudiated by the city, to commence, continue, and complete the work. The city's answer denied this allegation. At the trial there was a large amount of evidence given concerning the financial ability of E. J. Petersen, his preparations and resources for performing the work. No testimony was given as to the ability or disposition of the other plaintiff in error to perform the contract. No evidence was given that he endeavored to perform the contract. If the contract required the completion of the work within four months from July 28, 1920, the city did not renounce the contract until nearly three months after the full time for performance had elapsed. If the contract gave the plaintiffs in error a reasonable time, of about one year, as they claimed, to construct the walks, the city may have acted before the expiration of that period.

The plaintiffs in error complain of instructions given by the court whereby their recovery was made to depend upon the honest and reasonable belief of E. J. Petersen, at the time of the making of the contract or until March 22, 1921, that he could perform the contract in the time allowed for performance. The plaintiffs in error assert that they were not in default until the expiration of the full time allowed for performance, regardless of his belief in his ability to perform. Complaint is also made of the refusal of instructions asked by plaintiffs in error. It is not necessary to determine the propriety of the instructions asked or given. The evidence showed that the plaintiffs in er-

ror did not build any of the sidewalk, nor did they do any of the grading or other work required by the contract before the date when the city council passed the resolution repudiating the contract. A day or two afterwards E. J. Petersen delivered two wagon loads of sand near the place where the sidewalk was to be constructed. The issue made by the evidence centered about the claim of E. J. Petersen that he had lost the profits he would have made if he had been allowed to perform the contract. There is no other evidence of damages to plaintiffs in error shown by the record. E. J. Petersen testified that he had ordered some forms for use in concrete work, that he had endeavored to purchase cement, had inspected a sand pit owned by the city, where he expected to obtain sand and gravel, and had had conversations with bankers and others about securing funds with which to operate. He was not able to obtain cement, although there was a plentiful supply available, because the dealers who were approached would not sell to him on credit. The bankers and brokers he consulted with reference to loans refused his applications to borrow money. Other persons that he sought in the endeavor to obtain money gave indefinite answers, and none furnished him with funds. His own resources were limited. He had some equipment for the work, such as a small cement mixer, and a few wheelbarrows. He had done some similar work in a village near this city, but he was in debt for a large amount as a result of that work. It does not appear that he was the owner of any property except what has been mentioned, or that there was any person who was willing and able to give him enough assistance to complete the work. From July 28, 1920, to March 21, 1921, he seems to have made many efforts to obtain the means with which he could proceed, but his efforts ended in failure. The contract required a large amount of cement, enough to perform work which he estimated to be worth $30,000. The grading he had estimated at a price of $8,750. There were expenditures of large amounts required for other supplies and labor needed in performing the work.

[1] He told the city council in March, 1921, that he was unable to say whether he could perform the contract. He had excused his nonperformance many times by asserting that he was unable to obtain cement. He testified that he was able and ready and willing to do the work at the time he signed the contract, but there was no testimony that he was able or ready to perform the contract at any

later date. The covenants of the city to pay the plaintiffs in error for this work and their covenant to perform the work were mutual and dependent. Neither party to such a contract can maintain an action against the other party for loss of profits caused by a repudiation of the contract before the time for performance had arrived unless he pleads and proves that he would have been ready and willing to have performed the contract, if the repudiation had not occurred. Darland v. Greenwood (C. C.) 2 F. 660, 661; Neis v. Yocum (C. C.) 16 F. 168, 170; Kent v. Addicks, 126 F. 112, 114, 60 C. C. A. 660; Weed v. Lyons Petroleum Co. (D. C.) 294 F. 725, 732; Gray v. Smith, 83 F. 824, 829, 28 C. C. A. 168; Hampton v. Speckenagle (Pa.) 9 Serg. & R. 212, 222, 11 Am. Dec. 704; Bigler v. Morgan, 77 N. Y. 312, 318; Wells Fargo & Co. v. Page, 48 Or. 74, 80, 82 P. 856, 3 L. R. A. (N. S.) 103; Williston on Contracts, § 882.

[2] It is quite obvious that, if a contractor who agreed to furnish labor or materials would not have been able to have performed his part of the contract, he suffers no injury in loss of profits because the other contracting party refused to proceed with the contract.

[3] The evidence is not all preserved in the record presented in this court, but the bill of exceptions is certified as containing all the evidence necessary and material for a consideration of the exceptions alleged. A careful examination of the record leads us to the conviction that there was no substantial evidence that the plaintiffs in error were able or ready or would have been able or ready to have performed their contract with the city at the time when performance was required, whatever might have been found to have been the date of the performance, and therefore that a verdict should have been directed in favor of the city. If the plaintiffs in error were not entitled to recover under the evidence, there was no prejudicial error in the giving or refusal of the instructions. In West v. Camden, 135 U. S. 507, 521, 10 S. Ct. 838, 841 (34 L. Ed. 254), the court said:

"These views cover also the last instruction to the jury; and it becomes unnecessary to examine the question raised as to the second instruction, which was to the effect that, as the alleged contract was not in writing, the plaintiff could not recover upon it, because it was invalid under the fifth clause of the fourth section of the statute of frauds of Maryland, as being an agreement not to be performed within the space of one year

from the making thereof; for, even though that might have been an erroneous instruction, it did no harm to the plaintiff, because he could not recover in any event. Deery v. Cray, 5 Wall. 795, 807 [18 L. Ed. 653]; The Schools v. Risley, 10 Wall. 91, 115 [19 L. Ed. 850]; Deery v. Cray, 10 Wall. 263, 272 [19 L. Ed. 887]; Brobst v. Brock, 10 Wall. 519, 528 [19 L. Ed. 1002]; Barth v. Clise, 12 Wall. 400, 403 [20 L. Ed. 393]; Tweed's Case, 16 Wall. 504, 517 [21 L. Ed. 389]; Walbrun v. Babbitt, 16 Wall. 577, 580, 581 [21 L. Ed. 489]; Decatur Bank v. St. Louis Bank, 21 Wall. 294, 301 [22 L. Ed. 560]; McLemore v. Louisiana State Bank, 91 U. S. 27, 28 [23 L. Ed. 196]; Mobile & Montgomery Ry. Co. v. Jurey, 111 U. S. 584, 593 [4 S. Ct. 566, 28 L. Ed. 527]; Lancaster v. Collins, 115 U. S. 222, 227, [6 S. Ct. 33, 29 L. Ed. 373], and cases there cited; Evans v. Pike, 118 U. S. 241, 250 [6 S. Ct. 1090, 30 L. Ed. 234]."

See, also, Hinds v. Keith, 57 F. 10, 15, 6 C. C. A. 231; Creary v. Wefel, 135 F. 304, 67 C. C. A. 661; Alwart Bros. Coal Co. v. Royal Colliery Co., 211 F. 313, 317, 127 C. C. A. 599; N. K. Fairbank Co. v. Canal-Commercial T. & S. Co. (C. C. A.) 286 F. 648, 653; General Cigar Co. v. First Nat. Bank (C. C. A.) 290 F. 143, 146.

The judgment will be affirmed.